Filed 11/09/16

CERTIFIED FOR PARTIAL PUBLICATION[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| DAVID P. DINSLAGE,<br><br>      Plaintiff and Appellant,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO et al.,<br><br>      Defendants and Respondents. | A142365<br><br>(San Francisco County<br>Super. Ct. No. CGC11512096) |

David P. Dinslage is a former employee of Recreation and Parks Department (the Department) of the City and County of San Francisco (the City). As part of a large-scale restructuring of the Department's recreation programs, Dinslage's employment classification was eliminated, and he was one of a large number of employees who were laid off. Although he applied to be rehired in a newly created classification, he was not offered a position. He then retired from City employment.

Dinslage sued the Department, the City, and a number of the Department's managerial employees for age discrimination, retaliation, and harassment in violation of the California Fair Employment and Housing Act (FEHA). (Gov. Code, § 12940, subds. (a), (h), (j).)[1] He claimed the Department had taken a number of adverse employment actions against him based on his age. In addition, he claimed he had been

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II.

[1] All statutory references are to the Government Code.

retaliated against and harassed because of his age and his opposition to Department actions that discriminated against people with disabilities.

Respondents, defendants below, moved for summary judgment on all of Dinslage's causes of action. They claimed, with supporting evidence, that their actions were taken for legitimate, nondiscriminatory reasons. Dinslage opposed the motion, but the trial court agreed with respondents and granted them summary judgment on all counts of Dinslage's complaint.

Dinslage now appeals, contending there were triable issues of fact on his age discrimination and retaliation claims. In accordance with our standard of review, we have examined the record de novo. In the unpublished portion of our opinion, we conclude the trial court did not err in granting summary judgment to respondents on Dinslage's age discrimination claim.

In the published portion of our opinion, we hold the superior court properly granted summary judgment on Dinslage's retaliation claim because he failed to make out a prima facie case of retaliation. To prevail, Dinslage was required to show he suffered an adverse employment action because he had engaged in a "protected activity." We hold that Dinslage's opposition to Department policies and practices he viewed as discriminating against disabled members of the general public is not protected activity because his opposition was not directed at an unlawful *employment* practice. Thus, Dinslage could not reasonably have believed the practices he opposed were prohibited by the FEHA.

FACTUAL AND PROCEDURAL BACKGROUND

Because this case comes to us after a grant of summary judgment, we take the facts from the parties' separate statements of undisputed material facts and the evidence filed in support of and opposition to the motion. (See *Teselle v. McLoughlin* (2009) 173 Cal.App.4th 156, 175.)

*Dinslage's Employment with the Department*

Dinslage worked for the Department from June 1972 until his retirement in August 2010. He was employed in the Department's recreation division, which provides a range

2

of recreational programs and activities for people of all ages and abilities in the arts, sports and athletics, and leisure and community services.

Dinslage served initially as an assistant recreation director (classification 3280), working at playgrounds providing sports and recreational activities for children and adults. In 1985, he was promoted to the position of 3284 recreation director, where he oversaw recreational activities for the public, including children and adults with disabilities. In approximately 1998, Dinslage became the coordinator of assistive services, working almost exclusively on activities for children and adults with disabilities. The main activities Dinslage organized were annual parties—a rock and roll party, a Halloween party, a Thanksgiving luncheon, and a Christmas luncheon, as well as other small scale activities for people with disabilities.

Beginning in 2006, the Department began to consider relocating an event known as Jimmy's Old Car Picnic, a car show it had held in Golden Gate Park's Speedway Meadow since 1988. The car show's organizers donated proceeds from the show every year to fund Department activities for persons with disabilities, including Dinslage's parties. The reason the Department considered relocation was growing concern in the community and in the Department about the damage to the meadow caused by the event. Dinslage participated in a meeting involving the Mayor's office and the Department's Director of Operations, Dennis Kern, in which Dinslage and the car show's organizers opposed the Department's effort to change the location of the event. In February 2010, the Recreation and Park Commission (the Commission) held a hearing regarding the future of the car show. Ultimately, the Commission voted to continue the car show at Speedway Meadow after the organizers agreed to take certain mitigation measures.

*The Department's Decision to Focus on Inclusive Programs for the Disabled*

In the years before 2010, the Department had concluded its existing activities were not adequately meeting the needs of the disabled community, largely because the Department was not providing the disabled with sufficient access to the programs available to the general public. The Department decided to change its focus from providing separate, segregated programs to people with disabilities to ensuring all of the

3

Department's programs were accessible. The Department changed Dinslage's title to inclusion coordinator, a position responsible for improving access for persons with disabilities to all of the Department's recreational activities and programs. In 2009 and 2010, the Department eliminated many of the special events Dinslage organized, as they were segregated events.

In September 2009, the Department hired Ana Alvarez as superintendent of citywide services. One of her primary responsibilities was to implement the restructuring of recreation services to focus more on inclusion. Dinslage disagreed with these programmatic changes, and together with other Department employees, he met with his superiors to express his disagreement. Dinslage's refusal to accept and implement the changes was reflected in his final performance evaluation, which covered the period July 1, 2009 to August 14, 2010. Alvarez rated Dinslage as not meeting objectives in nearly all rating categories. She also gave him "development needed" ratings in several performance categories and an overall rating of three on a nine-point scale, a rating which meant Dinslage "[did] not meet Reporter's expectations for overall performance for this position."

*The Department's Reorganization*

Based on a 2004 assessment from an outside consultant, the Department decided to restructure its programs and create a new recreation model that would better reflect national trends and best practices in providing appropriate recreation services to all members of the public. In 2007, the Department developed a reorganization plan. The plan concluded the Department's model for recreation service delivery was "no longer fiscally sustainable." It recommended that the Department "focus on key recreation programs" for which the Department could be the premier provider and "consolidate recreation staff at principal sites to enable the level of recreation service delivery required by our mission statement."

One factor driving the Department's reorganization was a City budget crisis that required the Department to cut costs for several consecutive years to meet certain budgetary goals. For fiscal year 2010-2011, then-Mayor Gavin Newsom instructed the

4

Department to contribute $12.4 million to help balance the City's budget. The Department developed a plan to raise $8.7 million in revenue and reduce expenditures by $3.7 million. In February 2010, the Department presented its new recreation model to the Commission as part of its budget proposal for fiscal year 2010/2011. The Commission approved the budget proposal and new model. The new model restructured recreation into four citywide competencies: community services, sports and athletics, cultural arts, and leisure services, as well as making other changes to improve delivery of recreation services.

As part of this restructuring, the Department discontinued two employee classifications—3284 recreation director (Dinslage's position) and 3287 assistant recreation supervisor. In their place, the Department established four new classifications, including 3286 recreation facility/program coordinator. The Department worked closely with the City's Department of Human Resources (DHR) in creating the new positions and laying off employees in the eliminated positions.

*Dinslage's Layoff and Unsuccessful Application for Rehiring*

In March 2010, the Department notified employees in the 3284 classification, including Dinslage, they would be laid off as of May 8, 2010. Approximately 148 employees were laid off from the 3284 and 3287 classifications. Dinslage and other employees were encouraged to apply for various new positions, including 3283 recreation specialist, 3286 recreation coordinator, 3279 recreation leader and 3289 recreation supervisor.

In March 2010, Dinslage applied for a 3286 recreation coordinator position by completing an online written application and a position based test that had been developed by DHR. After scoring the exam and reviewing the candidates' training and experience, the Department ranked the qualified applicants, including Dinslage, on an eligible list. The civil service certification rule was "Rule of List," meaning everyone on the list could be considered for a position. DHR referred the eligible candidates to the Department which conducted a multi-step selection process for available positions.

5

Dinslage and 168 other candidates submitted timely supplemental applications. Approximately 107 candidates applied for program coordinator positions and 62, including Dinslage, applied for facility coordinator. Next, the Department invited all 169 applicants to interview on June 24 and 25, 2010. These candidates were screened for a second interview.

Dinslage and over 100 other candidates advanced to the second round of interviews. Three member panels consisting of managers from within the Department interviewed all the candidates using a set of prepared interview questions. The Department's guidelines contained three scoring categories: (a) "5 - Superior"; (b) "3 – Satisfactory" and (c) "1 – Unsatisfactory." Panelists asked candidates three basic questions and scored candidates on each.

The panel that interviewed Dinslage consisted of Kern and managers Lorraine Banford and Chris Boettcher. Dinslage performed poorly in the interview. The panelists found him negative and resentful. Boettcher said Dinslage "dismissed the whole reorganization and the need for it." Dinslage criticized the new recreation model and the change in programming from an emphasis on adaptive recreation to inclusion. Dinslage's responses suggested to the panelists that he would work against the goals of the reorganization.

Each panelist independently scored Dinslage on each question and those scores were averaged. Dinslage received mostly 2's and 3's with an overall average of 2.67, less than the satisfactory score of 3. Following the interviews, top managers of the four recreation competencies met to discuss the remaining candidates. The only candidates considered were those who had received scores of 3 or above during the interview. Dinslage was not selected for any of the 3286 recreation coordinator positions based on his performance during the interview.

Dinslage retired from City employment effective August 29, 2010.

*Dinslage's Action*

Dinslage filed his original Complaint on June 29, 2011, alleging causes of action against the City, Kern, Department General Manager Phil Ginsburg, and the Service

6

Employees International Union, Local 1021 (SEIU).[2] He filed the SAC on July 13, 2012. After the trial court sustained a demurrer to one of Dinslage's causes of action, there remained two pleaded claims—one for age discrimination against the City and the Department (§ 12940, subd. (a)), and one for harassment based on age against defendants Kern and Ginsburg (§ 12940, subd. (j)). The SAC also alleged retaliation, although it did not set out these allegations in a separate cause of action.

On December 24, 2013, defendants moved for summary judgment on all of Dinslage's claims. As to his age discrimination claim, they contended Dinslage could not establish a prima facie case, and even if he could, the Department had legitimate, nondiscriminatory reasons for its actions. Defendants advanced three such reasons for the alleged adverse employment actions against Dinslage: (1) the Department's changes to its programs and services for people with disabilities necessitated the elimination of the events Dinslage organized; (2) budgetary constraints and reforms to reflect best recreation practices required reductions in the Department's workforce; and (3) Dinslage's outspoken opposition to the Department's new focus on inclusive programs for the disabled raised concerns that he would not assist in implementing its new recreation model.

---

[2] At some point following the Department's reorganization, the SEIU initiated a grievance proceeding on behalf of all affected members in certain specified classifications. Dinslage was among this group of employees. The SEIU maintained Dinslage had been discriminated and retaliated against because of his opposition to the proposed elimination of the car show and his speaking in favor of Department employees who were about to lose their jobs.

The record is unclear on the outcome of this grievance proceeding. The operative second amended complaint (SAC) alleges that the SEIU informed Dinslage that his grievance had been processed, but failed to advise him about the results of the proceedings or possible remedies. It further alleges Kern and Ginsburg improperly influenced union representatives to terminate the grievance process. Dinslage's original complaint contained a cause of action against the SEIU for breach of duty of fair representation, but that cause of action was omitted from the SAC, which does not list the SEIU as a defendant. Neither the outcome of the grievance nor the allegations against the SEIU are relevant to this appeal, and we will not discuss them further.

With regard to Dinslage's retaliation claim, defendants contended both that he could not make out a prima facie case because he had not engaged in protected activity for purposes of the FEHA and that it had legitimate, nondiscriminatory reasons for its actions. In particular, defendants argued Dinslage had never complained about any discrimination against himself or another employee prohibited by the FEHA. To the extent he had complained about discrimination at all, it concerned what Dinslage believed to be Department actions resulting in discrimination against members of the general public.

On March 25, 2014, the court granted the defendants' motion in its entirety. The court entered judgment on May 15, 2014. Dinslage then filed this appeal.

## DISCUSSION

Dinslage raises two arguments in his opening brief. First, he contends there are triable issues of fact on his age discrimination claim. Second, he argues there is evidence the Department retaliated against him for supporting and promoting the rights of the disabled community. We will address these arguments after setting forth the relevant law and our standard of review.[3]

## I. *Governing Law and Standard of Review*

"Because of the similarity between state and federal employment discrimination laws, California courts look to pertinent federal precedent when applying our own statutes." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 354 (*Guz*).) In employment discrimination cases under the FEHA, California has adopted the three-stage burden-shifting test established by the United States Supreme Court to analyze disparate

---

[3] On review of a grant of summary judgment, we may disregard assertions or contentions not raised in a properly headed argument. (*Roberts v. Lomanto* (2003) 112 Cal.App.4th 1553, 1562; see Cal. Rules of Court, rule 8.204(a)(1)(B) ["Each brief must: . . . State each point under a separate heading or subheading summarizing the point"].) Thus, "[a]lthough we address the issues raised in the headings, we do not consider all of the loose and disparate arguments that are not clearly set out in a heading and supported by reasoned legal argument." (*Provost v. Regents of University of California* (2011) 201 Cal.App.4th 1289, 1294.) To the extent Dinslage's opening brief contains arguments not set out under distinct headings, we decline to entertain them.

treatment claims of age discrimination. (*Ibid*., citing *Texas Dept. of Community Affairs v. Burdine* (1981) 450 U.S. 248 and *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792). At trial, this test initially requires a plaintiff to establish a prima facie case of discrimination. (*Guz, supra,* 24 Cal.4th at p. 354; *Hersant v. Department of Social Services* (1997) 57 Cal.App.4th 997, 1002 (*Hersant*).) The plaintiff must generally provide evidence that: (1) he was a member of a protected class, (2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive. (*Guz, supra,* 24 Cal.4th at p. 355.)

If the plaintiff satisfies this prima facie burden at trial, a presumption of discrimination arises, and the defendant must put forth legitimate, nondiscriminatory reason for its actions. (*Guz, supra,* 24 Cal.4th at p. 355.) If the defendant does so, the plaintiff must then rebut these nondiscriminatory reasons with evidence of pretext. (*Hersant, supra,* 57 Cal.App.4th at pp. 1004-1005 [the employee "must offer substantial evidence that the employer's stated nondiscriminatory reason for the adverse action was untrue or pretextual, or evidence the employer acted with a discriminatory animus, or a combination of the two, such that a reasonable trier of fact could conclude the employer engaged in intentional discrimination"].) If the employer meets this burden, the presumption of discrimination disappears. (*Guz, supra,* 24 Cal.4th at p. 356.) The plaintiff may then attack the employer's proffered reasons as mere pretexts for discrimination or offer other evidence of discriminatory motive, but the ultimate burden of persuasion remains on the plaintiff. (*Ibid*.)

"A defendant employer's motion for summary judgment slightly modifies the order of these showings. If, as here, the motion for summary judgment relies in whole or in part on a showing of nondiscriminatory reasons for the discharge, the employer satisfies its burden as moving party if it presents evidence of such nondiscriminatory reasons that would permit a trier of fact to find, more likely than not, that they were the basis for the termination. [Citations.] To defeat the motion, the employee then must

9

adduce or point to evidence raising a triable issue, that would permit a trier of fact to find by a preponderance that intentional discrimination occurred. [Citations.] In determining whether these burdens were met, we must view the evidence in the light most favorable to plaintiff, as the nonmoving party, liberally construing [his] evidence while strictly scrutinizing defendant's. [Citation.]" (*Kelly v. Stamps.com Inc.* (2005) 135 Cal.App.4th 1088, 1097-1098.)

On appeal from a grant of summary judgment, we review the record de novo. (*Guz, supra,* 24 Cal.4th at p. 334.) "[A]lthough we use a de novo standard of review here, we do not transform into a trial court." (*Morgan v. Imperial Irrigation Dist.* (2014) 223 Cal.App.4th 892, 913.) " 'On review of a summary judgment, the appellant has the burden of showing error, even if he did not bear the burden in the trial court. [Citation.] . . . . As with an appeal from any judgment, it is the appellant's responsibility to affirmatively demonstrate error and, therefore, to point out the triable issues the appellant claims are present by citation to the record and any supporting authority. In other words, review is limited to issues which have been adequately raised and briefed." [Citation.]' [Citation.]" (*Bains v. Moores* (2009) 172 Cal.App.4th 445, 455.)

To meet this burden on an appeal from a grant of summary judgment, an appellant must "direct the court to *evidence* that supports his arguments." (*Hodjat v. State Farm Mutual Automobile Ins. Co.* (2012) 211 Cal.App.4th 1, 10 (*Hodjat*), italics added.) "Moreover, an appellant is required to not only cite to valid legal authority, but also explain how it applies in his case. [Citation.] It is not the court's duty to attempt to resurrect an appellant's case or comb through the record for evidentiary items to create a disputed issue of material fact." (*Ibid.*) An appellant who fails to pinpoint the evidence in the record indicating the existence of triable issues of fact will be deemed to have waived any claim the trial court erred in granting summary judgment. (*Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1115-1116 (*Guthrey*).)

10

II.   *The Trial Court Properly Granted Summary Judgment on Dinslage's Age Discrimination Claim, Because Dinslage Failed to Rebut the Department's Showing of Legitimate, Nondiscriminatory Reasons for its Actions.*

Dinslage contends there are disputed issues of fact regarding his age discrimination claim. His argument is not a model of clarity, but he appears to contend his claim is viable because he is over 40 years of age and the decision not to rehire him had an adverse effect on him. In addition, he asserts that discrimination may be inferred from evidence of threats against him, comments that he was targeted for elimination by the Department, and the failure of the Department to observe proper layoff procedures.

A.   *Dinslage Did Not Plead a Disparate Impact Claim.*

Initially, Dinslage's argument confuses a discrimination claim based on disparate *treatment* (which he alleged) and a discrimination claim based on disparate *impact* (which he did not).[4] Since he did not plead a disparate impact claim in the trial court, he may not rely on that theory in this court. (*Johanson Transportation Service v. Rich Pik' d Rite, Inc.* (1985) 164 Cal.App.3d 583, 588 [on appeal from grant of summary judgment, "possible theories not fully developed or factually presented to the trial court cannot create a 'triable issue' on appeal"].) Moreover, even if his pleadings could be construed to have raised a disparate impact claim, to support it " 'the plaintiff must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group. . . .' [Citation.]" (*Carter v. CB Richard Ellis, Inc.* (2004) 122 Cal.App.4th 1313, 1323-1324.) Dinslage offered no such evidence.

---

[4] "In general, there are two types of illegal discrimination. These are disparate treatment and disparate impact. Under the disparate treatment theory, . . . , an individual is discriminated against when the employer 'treats some people less favorably than others because of their race, color, religion, sex or national origin.' [Citation.] [¶] In disparate treatment cases, the plaintiff must prove the ultimate fact that the defendant engaged in intentional discrimination." (*Heard v. Lockheed Missiles & Space Co.* (1996) 44 Cal.App.4th 1735, 1748.)

B.    *Dinslage Failed to Produce Evidence Permitting an Inference of Intentional Age Discrimination.*

Turning to the claim Dinslage did plead, his opening brief fails to demonstrate the trial court erred.  (See *Bains v. Moores, supra,* 172 Cal.App.4th at p. 455.)  His opening brief contends "there is ample evidence of threats by management of discontinuing and/or terminating [his] career employment, with commentaries traced to [Kern] on a consistent basis that [Dinslage] was being targeted for elimination at [the Department]."  To prevail on this claim, however, it is not enough for Dinslage to show he was threatened with termination or targeted for elimination.  "[E]mployers have the right to unfairly and harshly criticize their employees . . . and to threaten to terminate or demote the employee."  (*Thompson v. Tracor Flight Systems, Inc.* (2001) 86 Cal.App.4th 1156, 1171.)  Instead, Dinslage was required to show the Department's actions were motivated by his age.  (See *Guz, supra,* 24 Cal.4th at p. 355.)  Aside from stating he was 60 years old at the time of the alleged adverse actions, this portion of his opening brief fails to explain the connection between his age and the Department's failure to rehire him.

In the court below, the Department presented evidence that its reorganization was due, in significant part, to budgetary reasons and that Dinslage was not rehired because of poor performance in the interview and opposition to the new focus on inclusive programs for the disabled.  These were all legitimate, nondiscriminatory reasons for its actions.  (See *Arteaga v. Brinks, Inc.* (2008) 163 Cal.App.4th 327, 352 ["loss of confidence in an employee . . . is a legitimate, nondiscriminatory reason for discharge"]; *Villanueva v. City of Colton* (2008) 160 Cal.App.4th 1188, 1195 ["an employer's depressed economic condition 'can be good cause for discharging [an] employee' "]; *Horn v. Cushman & Wakefield Western, Inc.* (1999) 72 Cal.App.4th 798, 815 [employer could terminate employee in restructuring where employee " 'had a different vision going forward' "]. )  Faced with this showing of nondiscriminatory reasons, it was incumbent upon Dinslage to come forward with admissible evidence from which the trier of fact could rationally infer that intentional discrimination had nonetheless occurred.  (*Guz, supra,* 24 Cal.4th at p. 357 [after employer produced evidence of legitimate, nondiscriminatory reasons for

12

eliminating plaintiff's work unit and choosing persons other than plaintiff for vacant positions, plaintiff "had the burden to *rebut* this facially dispositive showing by pointing to evidence which nonetheless raises a rational inference that intentional discrimination occurred"].)  He failed to do so.

The sole evidence Dinslage points to in support of his claim that he was targeted for elimination is his own declaration.  But "plaintiff's subjective beliefs in an employment discrimination case do not create a genuine issue of fact; nor do uncorroborated and self-serving declarations." (*King v. United Parcel Service, Inc.* (2007) 152 Cal.App.4th 426, 433 (*King*).)  Looking at the cited portion of his declaration, we find it does nothing more than describe the contents of his union grievance.  Even if we take the declaration on its own terms, it says only that Kern expressed animus to Dinslage because the latter opposed the elimination of the car show.  It goes on to repeat the SEIU's assertion in Dinslage's union grievance that he had been discriminated against.  Obviously, this assertion is a mere legal conclusion; it is not evidence.[5]  (See *Guthrey, supra,* 63 Cal.App.4th at p. 1119 [declarations containing only conclusory assertions of discrimination were based on opinion, not facts].)  It cannot serve to show the existence of a triable issue of material fact.

Dinslage's opening brief also claims he was selected by three supervisors for continued employment.  The only record support for this claim is a citation to Dinslage's memorandum of points and authorities in opposition to the motion for summary judgment.  Not only is it inappropriate for Dinslage to incorporate by reference

---

[5] Dinslage also claims citywide layoff procedures were not followed, but nowhere in his brief does he explain how the Department violated those procedures.  Indeed, he does not even tell us what those procedures are.  We may disregard arguments unsupported by citation to the record and legal authority.  (*Regents of University of California v. Sheily* (2004) 122 Cal.App.4th 824, 826-827, fn. 1 (*Sheily*).)

In any event, the Department presented evidence showing it implemented the layoffs because of budgetary constraints, and it followed proper procedures in doing so.  Dinslage's response to the Department's separate statement did not dispute the Department's need to cut costs because of the City's ongoing budget crisis, and he does not disagree that an employer's straitened economic circumstances can be good cause for discharge.  (*Villanueva v. City of Colton, supra,* 160 Cal.App.4th at p. 1195.)

arguments made below (*McGuan v. Endovascular Technologies, Inc.* (2010) 182 Cal.App.4th 974, 987), but "points and authorities state *legal arguments,* not *facts*[.]" (*People v. Duvall* (1995) 9 Cal.4th 464, 482.) As such, they also cannot serve to show the existence of a triable issue of material fact.

Furthermore, in the court below, the Department submitted declarations from the three supervisors who interviewed Dinslage, and all of them stated he received unsatisfactory scores in his interview with them and thus was not rated highly enough to be selected for one of the newly created positions. Dinslage did not dispute receiving unsatisfactory scores. He simply claimed the issue was disputed because no minimum score was required. Again, however, the only support for this assertion was a paragraph of his own declaration in which he stated the Department had violated the "Rule of Lists." His declaration in turn referred, without further explanation, to a 16-page exhibit containing rules for position-based testing. Dinslage's assertion that the Department had violated its rules is a bare legal conclusion and is not evidence. (*Guthrey, supra,* 63 Cal.App.4th at p. 1119.) It was insufficient to demonstrate the existence of a triable issue of fact. (*King, supra,* 152 Cal.App.4th at p. 433.) And in this court, Dinslage "provide[s] no analysis in [his] brief as to how the evidence in the record demonstrates the existence of a triable issue of fact" on this point. (*Bains v. Moores, supra,* 172 Cal.App.4th at p. 454.) "[W]e may disregard conclusory arguments that . . . fail to disclose the reasoning by which the appellant reached the conclusions he wants us to adopt." (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 287.) We therefore conclude Dinslage has failed to show the trial court erred in granting summary judgment to the Department on his age discrimination claim.

III. *The Trial Court Properly Granted Summary Judgment on the Retaliation Claim, Because Dinslage Failed to Make Out a Prima Facie Case.*

The trial court found "Defendants have met their burden to show that Plaintiff did not engage in protected activity under the FEHA," because the "evidence shows that Plaintiff did not speak out against the Defendants for engaging in discriminatory conduct directed at Defendants' employees." The court found Dinslage's evidence "only shows

14

that [he] spoke in public forums regarding his concern that the . . . Department's reorganization would cause layoffs and the potential negative effects the reorganization would have on members of the public who have disabilities." Thus, the trial court found Dinslage had failed to establish the first element of his retaliation claim, because he had not shown he had engaged in protected activity under the FEHA.

Dinslage argues there are disputed issues of fact precluding summary judgment on his retaliation claim. As we explain, the trial court did not err in granting summary judgment to the Department, because Dinslage failed to make out a prima facie case of retaliation.[6]

A. *Retaliation – Elements of a Prima Facie Case*

Section 12940, subdivision (h) makes it unlawful "[f]or any employer . . . to discharge, expel, or otherwise discriminate against any person because the person has opposed *any practices forbidden under this part . . . .*" (Italics added.) To make out a prima facie case of retaliation under the statute, Dinslage had to show (1) he engaged in a protected activity, (2) the Department subjected him to an adverse employment action, and (3) a causal link existed between the protected activity and the Department's action. (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042 (*Yanowitz*).)

"For protection under the 'opposition clause,' an employee must have opposed an employment practice made unlawful by the statute." (1 Chin et al., Cal. Practice Guide, Employment Litigation (The Rutter Group 2015) § 5:1506, p. 5(II)-8; see *Nealy v. City of Santa Monica* (2015) 234 Cal.App.4th 359, 380 (*Nealy*) [to be protected, employee's activities must "take[] the form of opposing any practices forbidden by FEHA"].) The

---

[6] We note this portion of Dinslage's opening brief provides almost no citations to the record. The only record materials cited are Dinslage's declaration and portions of his memorandum of points and authorities in opposition to the Department's motion for summary judgment. For the reasons set forth in the preceding section of this opinion, these materials are inadequate to demonstrate the existence of a triable issue of fact. (*King, supra,* 152 Cal.App.4th at p. 433.) Indeed, given the lack of citation to the record and supporting authority, we would be fully justified in disregarding the arguments made in this portion of the opening brief. (See, e.g., *Sheily, supra,* 122 Cal.App.4th at pp. 826-827, fn. 1.)

15

question, therefore, is whether the Department took adverse action against Dinslage "because [he] . . . *opposed practices prohibited by the Act . . . .*" (Cal. Code Regs., tit. 2, § 11021(a), italics added.) Of course, "an employee's conduct may constitute protected activity . . . not only when the employee opposes conduct that ultimately is determined to be unlawfully discriminatory under the FEHA, but also when the employee opposes conduct that the employee reasonably and in good faith believes to be discriminatory, whether or not the challenged conduct is ultimately found to violate the FEHA." (*Yanowitz, supra,* 36 Cal.4th at p. 1043.) As we have held, "a mistake of either fact or law may establish an employee's good faith but mistaken belief that he or she is opposing conduct prohibited by FEHA." (*Kelley v. The Conco Companies* (2011) 196 Cal.App.4th 191, 209 (*Kelly*).) In such cases, the question is the reasonableness of the employee's belief that he was opposing a practice prohibited by the FEHA. (See *Flait v. North American Watch Corp.* (1992) 3 Cal.App.4th 467, 477.)

The federal courts hold that the reasonableness of the employee's belief "has both a subjective and an objective component."[7] (*Little v. United Technologies* (11th Cir. 1997) 103 F.3d 956, 960 (*Little*); accord, *Hamner v. St. Vincent Hosp. and Health Care Center* (7th Cir. 2000) 224 F.3d 701, 707 ["The plaintiff must not only have a subjective (sincere, good faith) belief that he opposed an unlawful practice; his belief must also be objectively reasonable, which means that the [conduct] must involve discrimination that is prohibited by Title VII."]; *Moyo v. Gomez* (9th Cir. 1994) 40 F.3d 982, 985 ["The reasonableness of [the plaintiff's] belief that an unlawful employment practice occurred must be assessed according to an objective standard"].) To meet his burden on this issue, "[a] plaintiff must not only show that he *subjectively* (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief was *objectively* reasonable in light of the facts and record presented." (*Little, supra,* 103 F.3d at p. 960.) The objective reasonableness of an employee's belief that his employer has

_____

[7] In interpreting the FEHA, California courts frequently look to federal case law interpreting Title VII of the Civil Rights Act of 1964. (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 463 (*Miller*).)

16

engaged in a prohibited employment practice "must be measured against existing substantive law." (*Clover v. Total System Services, Inc.* (11th Cir. 1999) 176 F.3d 1346, 1351; see *Kelly, supra,* 196 Cal.App.4th at pp. 209-210 [plaintiff's belief objectively reasonable because at time of conduct complained of, two California Courts of Appeal had concluded such conduct constituted violation of the FEHA].)

B.    *None of Dinslage's Activities Opposed Practices Made Unlawful by the FEHA.*

As we understand Dinslage's opening brief, it identifies at most three allegedly protected activities. First, Dinslage contends the Department retaliated against him for his overall support and promotion of the rights of the disabled community. Second, he attributes his failure to be rehired to his opposition to the relocation of Jimmy's Old Car Show. Third, he states he spoke in opposition to what he viewed as the elimination of a program benefitting the disabled community. We conclude none of these activities are protected for the purposes of the FEHA's antiretaliation provision, because none of them express opposition to practices one could reasonably believe are unlawful under the FEHA.

As noted earlier, "[t]he FEHA protects employees against retaliation . . . for opposing conduct *made unlawful by the act*." (*Miller, supra,* 36 Cal.4th at p. 472, italics added.) In his opening brief, Dinslage discusses the opinion in *Yanowitz* at some length, but he does not explain how it supports his claim that the actions he opposed violated the FEHA. (*Hodjat, supra,* 211 Cal.App.4th at p. 10 ["an appellant is required to not only cite to valid legal authority, but also explain how it applies in his case"].) He cites no authority for his apparent claim that general advocacy for the disabled community or opposition to elimination of allegedly beneficial programs constitute "opposing conduct made unlawful by the act." (*Miller, supra,* 36 Cal.4th at p. 472.) This is fatal to his claim, because "case law and FEHA's implementing regulations are uniformly premised on the principle that the nature of activities protected by section 12940, subdivision (h) demonstrate some degree of opposition to or protest of the employer's conduct or practices based on the employee's reasonable belief that the employer's action or practice

17

is unlawful." (*Rope v. Auto-Chlor System of Washington, Inc.* (2013) 220 Cal.App.4th 635, 652-653.)

That Dinslage opposed what he viewed as unwise or even improper actions by the Department is not enough to make his opposition a protected activity. Again, to be protected, an employee's actions "must oppose activity the employee *reasonably* believes constitutes unlawful discrimination[.]" (*Yanowitz, supra,* 36 Cal.4th at p. 1047, italics added.) "A plaintiff's belief on this point is not reasonable simply because he or she complains of something that appears to be discrimination in some form." (*Kelly v. Howard I. Shapiro & Associates Consulting* (2d Cir. 2013) 716 F.3d 10, 15.) Thus, Dinslage's advocacy for the disabled community and opposition to elimination of programs that might benefit that community do not fall within the definition of protected activity. Dinslage has not shown the Department's actions amounted to discrimination against disabled citizens, but even if they could be so construed, discrimination by an employer against members of the general public is not a prohibited *employment* practice under the FEHA. (See, e.g., *Wimmer v. Suffolk County Police Dept.* (2d Cir. 1999) 176 F.3d 125, 136 [police officer could not reasonably have believed he was fired in retaliation for opposing prohibited employment practice where his complaints concerned discriminatory practices by fellow police officers against members of general public]; *Crowley v. Prince George's County, Md.* (4th Cir. 1989) 890 F.2d 683, 687 ["racial harassment perpetrated by police officers against members of the community" was not discriminatory employment practice on which retaliation claim could be predicated]; *Taneus v. Brookhaven Memorial Hosp. Medical Center* (E.D.N.Y. 2000) 99 F.Supp.2d 262, 267 ["Neither the 'unlawful practice' nor the 'good faith belief' requirement is satisfied where the practice complained of was not directed at employees but, instead, was directed to individuals who are not in an employment relationship with the defendant."].)

Similarly, the Ninth Circuit has held that blowing the whistle on an employer's allegedly unlawful environmental practices "is not covered by FEHA because it is not conduct that gives rise to discrimination on the basis of any of the protected categories

18

under FEHA." (*Arn v. News Media Group* (9th Cir. 2006) 175 Fed.Appx. 844, 846.) Indeed, activity with a much closer relationship to an employer's actual practices has been held unprotected by the statute because it did not demonstrate opposition to an employer's unlawful conduct. (See *Nealy, supra,* 234 Cal.App.4th at p. 381 [under former version of FEHA, "protected activity does not include a mere request for reasonable accommodation"].) In short, Dinslage could not reasonably have believed his actions constituted protected activity, because there is no dispute his opposition was not directed at the Department's *employment* practices. (See *Clark County School Dist. v. Breeden* (2001) 532 U.S. 268, 270 [employee could not prevail on claim of retaliation where "no one could reasonably believe" incident complained of violated federal anti-discrimination statute]; *Weeks v. Harden Mfg. Corp.* (11th Cir. 2002) 291 F.3d 1307, 1312 [plaintiffs could not have objectively reasonable belief that requiring mandatory arbitration for employment discrimination claims was unlawful employment practice]; *Miller, supra,* 36 Cal.4th at p. 472 [FEHA protects employees from retaliation for opposing practices made unlawful by the statute].)

Likewise, Dinslage's opposition to the relocation of the car show is not a protected activity under the FEHA. As our high court has explained, "complaints about personal grievances or vague or conclusory remarks that fail to put an employer on notice as to what conduct it should investigate will not suffice to establish protected conduct." (*Yanowitz, supra,* 36 Cal.4th at p. 1047.) Moreover, Dinslage makes no effort to explain how opposition to the car show's relocation might be construed as opposition to a prohibited employment practice. It is incumbent upon him to set forth the reasoning behind this argument, and his failure to do so permits us to disregard it. (*City of Santa Maria v. Adam, supra,* 211 Cal.App.4th at p. 287.)

In sum, Dinslage has failed to show that he engaged in protected activity under the FEHA. Because he did not establish he had engaged in such activity, he failed to make out a prima facie case of retaliation. The trial court therefore did not err in granting summary judgment on Dinslage's retaliation claim.

19

DISPOSITION

The judgment is affirmed.  Respondents shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)

_____

Jones, P.J.

We concur:

_____

Simons, J.

_____

Needham, J.

A142365

Superior Court of the County of San Francisco, No. CGC11512096, Ernest H. Goldsmith, Judge.

James Paul Green, for Plaintiff and Appellant.

Ruth M. Bond, Office of the City Attorney, for Defendants and Respondents.

A142365