Filed 7/23/25  Montez v. U.S. Bank CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| DIANNA MONTEZ, | D084312 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2020-00015790-CU-OR-CTL) |
| U.S. BANK, NA, as Successor Trustee, etc., | |
| Defendant and Respondent. | |


APPEAL from a judgment of the Superior Court of San Diego County, James A. Mangione, Judge.  Affirmed.

Dianna Montez, in pro. per., for Plaintiff and Appellant.

Kutak Rock, Steven M. Dailey and Jennifer L. Andrews for Defendant and Respondent.

INTRODUCTION

In this foreclosure action, Dianna Montez appeals the entry of summary judgment on her operative amended complaint asserting causes of action against U.S. Bank, NA (U.S. Bank).  We affirm because the trial court relied on two independent grounds for granting summary judgment, and

Montez does not meet her appellate burden of showing both grounds were erroneous.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 8, 2005, Montez obtained a $450,000 mortgage from Washington Mutual Bank, FA (Washington Mutual) secured by a deed of trust on residential real property in San Diego (property). Later that year, the mortgage was transferred into a securitization trust[1] called the "WaMu Mortgage Pass-Through Certificates Series 2005-AR17" trust (the securitization trust). LaSalle Bank NA (LaSalle Bank) was the securitization trust's original trustee, and Washington Mutual was its original mortgage servicer.

On July 14, 2009, a document titled "Assignment of Deed of Trust" was recorded on the property (the 2009 assignment). (Capitalization omitted.) It stated the beneficial interest in the Montez deed of trust was assigned to "Bank of America, National Association [(Bank of America)] as successor by

---

[1] "The mortgage securitization process has been concisely described as follows: 'To raise funds for new mortgages, a mortgage lender sells pools of mortgages into trusts created to receive the stream of interest and principal payments from the mortgage borrowers. The right to receive trust income is parceled into certificates and sold to investors, called certificateholders. The trustee hires a mortgage servicer to administer the mortgages by enforcing the mortgage terms and administering the payments. The terms of the securitization trusts as well as the rights, duties, and obligations of the trustee, seller, and servicer are set forth in a Pooling and Servicing Agreement ("PSA").' " (*Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 930, fn. 5, quoting *BlackRock Financial Management v. Ambac Assurance Corp.* (2d Cir. 2012) 673 F.3d 169, 173.)

2

merger to LaSalle Bank NA as trustee for [the securitization trust]."[2]  U.S. Bank later succeeded Bank of America as trustee of the securitization trust.

## I.

### *Montez's First Lawsuit*

In 2011, Montez filed a federal lawsuit[3] against two defendants, including JPMorgan Chase Bank, NA (JPMorgan Chase), which succeeded Washington Mutual as mortgage servicer for the securitization trust. Montez's lawsuit was based on difficulties she experienced obtaining a loan modification.  After she started trying to obtain a loan modification, she did not make all of her monthly mortgage payments.  She signed a loan modification agreement "under duress" in October 2010 but then stopped making monthly payments.  A foreclosure sale was on calendar when she filed the lawsuit.

Montez alleged JPMorgan Chase had committed acts or omissions that made the loan modification process legally deficient.  She asserted causes of action for unlawful, unfair, and fraudulent business practices in violation of the unfair competition law (Bus. & Prof. Code, § 17200 et seq.) (UCL), unfair debt collection practices (Civ. Code, § 1788 et seq.), violation of the

---

[2]    The relevant part of the 2009 assignment stated:  "FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to Bank of America, National Association as successor by merger to LaSalle Bank NA as trustee for WaMu Mortgage Pass-Through Certificates Series 2005-AR17 Trust all beneficial interest under that certain Deed of Trust dated 07/08/2005, executed by DIANNA MONTEZ."  The assignment was signed by Deborah Brignac, vice president of "JPMorgan Chase Bank, National Association, successor in interest to WASHINGTON MUTUAL BANK, FA."

[3]    *Montez v. Chase Home Finance LLC, et al.*, (S.D.Cal., No. 11-CV-530 JLS (MDD)) (*Montez I*).

3

Consumers Legal Remedies Act (Civ. Code § 1750, et seq.), breach of contract, breach of the duty of good faith and fair dealing, promissory estoppel, and unjust enrichment. JPMorgan Chase moved to dismiss for failure to state a claim (Fed. Rules Civ. Proc., rule 12(b)(6), 28 U.S.C.), and in February 2016, the district court granted the motion and dismissed the operative amended complaint with leave to amend. Rather than amend, Montez filed an interlocutory appeal. In early 2018, the United States Court of Appeals for the Ninth Circuit affirmed the dismissal and denied Montez's motion for reconsideration of its affirmance.

## II.

### *Montez's Second Lawsuit*

In late 2018, Montez filed a second federal lawsuit[4] against the same defendants based on improprieties allegedly committed by the district court and the defendants in *Montez I*. She asserted a single cause of action for fraud on the court. JPMorgan Chase moved to dismiss for failure to state a claim. On May 1, 2019, the district court granted the motion and dismissed the complaint with prejudice.

## III.

### *This Lawsuit*

On May 6, 2019, the property was sold in a trustee's sale. In 2020, Montez filed a complaint in superior court against U.S. Bank and Quality Loan Service Corporation (Quality) challenging the legality of the foreclosure. She alleged that on or around December 12, 2018, Quality recorded a notice of default on the property "on behalf of [U.S. Bank], successor trustee to

---

4   *Montez v. Chase Home Finance LLC, et al.* (S.D. Cal., No. 3:18-cv-02899-BEN-LL) (*Montez II*).

4

[Bank of America], successor in interest to [LaSalle Bank], as trustee, on behalf of the holders of [the securitization trust]." On or around March 13, 2019, Quality caused a notice of trustee's sale to be recorded. A third party then purchased the property at the trustee's sale.

A.    *Complaint*

Montez's complaint asserted causes of action for (1) violation of the California Homeowner Bill of Rights (Civ. Code, § 2923.4 et seq.) (HBOR),[5] (2) wrongful foreclosure, (3) breach of the covenant of good faith and fair dealing, (4) negligence, and (5) unfair business practices in violation of the UCL. The cause of action for violation of the HBOR was based on alleged deficiencies in the handling of her "foreclosure alternative application." The cause of action for wrongful foreclosure was based on allegations the 2009 assignment was "void ab initio" because JPMorgan Chase did not have the authority to assign rights under the deed of trust, and because Brignac's signature on the assignment—despite being notarized—was forged. The causes of action for negligence and unfair business practices were predicated on the same violations alleged in the first two causes of action.

U.S. Bank demurred, including on grounds the causes of action were deficiently pled as well as barred under the doctrine of res judicata by virtue

---

[5]    "HBOR and complementary federal legislation specify various affirmative actions a servicer is obligated to take when receiving modification applications. For example, HBOR specifies that upon receiving certain modification applications, 'the mortgage servicer shall provide written acknowledgement of the receipt of the documentation' and must include in that acknowledgement 'an estimate of when a decision on the loan modification will be made,' 'deadlines to submit missing documentation,' '[a]ny expiration dates for submitted documents,' and '[a]ny deficiency in the . . . modification application.' " (*Sheen v. Wells Fargo Bank, N.A.* (2022) 12 Cal.5th 905, 921.)

of the judgments in *Montez I* and *Montez II*. The trial court sustained the demurrer without leave to amend as to the cause of action for breach of the covenant of good faith and fair dealing, sustained it with leave to amend as to the cause of action for unfair business practices, and otherwise overruled it.

B.    *First Amended Complaint*

Montez then filed a first amended complaint (FAC) asserting causes of action for (1) violation of the HBOR, (2) wrongful foreclosure, (3) negligence, and (4) unfair business practices. U.S. Bank demurred for failure to state a claim. The trial court sustained the demurrer without leave to amend as to the wrongful foreclosure cause of action, reasoning Montez's allegation that notice of default was recorded "on behalf of [U.S. Bank], successor trustee to [Bank of America], successor in interest to [LaSalle Bank], as trustee [of the securitization trust]" constituted an acknowledgement U.S. Bank was "the proper successor trustee" with authority to foreclose. U.S. Bank filed an answer to the FAC.

C.    *Motion for Summary Judgment, or Alternatively Summary Adjudication*

U.S. Bank moved for summary judgment, or alternatively summary adjudication, as to the remaining causes of action in the FAC. It argued, in part, that the FAC in its entirety was barred under the doctrine of res judicata by the judgments in *Montez I* and *Montez II*. It argued in the alternative that the material facts underlying each individual cause of action were undisputed and warranted entry of judgment in its favor.

The moving evidence consisted of declarations and a compendium of 24 exhibits.[6] U.S. Bank also sought judicial notice of 16 documents. It

---

[6]    This supporting evidence included copies of the Pooling and Service Agreement (PSA) for the securitization trust, a document called a boarding

submitted a separate statement of undisputed material facts based on these materials. Based on its proffered undisputed material facts, U.S. Bank identified over a dozen reasons for adjudicating the causes of action in its favor.

On the cause of action for violation of the HBOR, it identified the following dispositive issues: (1) the property at issue was not owner-occupied as Montez was residing in Louisiana; (2) Montez defaulted on a prior loan modification (3) no loan modification application was submitted between 2011 and 2018 nor was one pending at the time of the foreclosure sale; (4) Montez was assigned a single point of contact and never requested a foreclosure alternative; and (5) liability under the HBOR is limited to material violations, and the claimed violations were not material.

As for the negligence cause of action, U.S. Bank raised two reasons why it failed as a matter of law: (1) it did not owe Montez a duty of care sounding in negligence; and (2) it "did not breach any duty." (Boldface and capitalization omitted.) In support of the second ground, it argued that as a successor trustee to Bank of America, it did not lack the authority to initiate the foreclosure. It also argued Montez lacked standing to challenge an assignment that was merely voidable rather than void, and her claim of an

_____

tape, and the 2009 assignment. It also included the declaration of Michelle Simon, an employee of Select Portfolio Servicing since February 2000. Simon averred that Montez's loan transferred into the securitization trust in 2005, and that the boarding tape "shows that the [l]oan was transferred to the trust." She also stated the 2009 assignment "reflect[ed] that beneficial interest in the Deed of Trust was assigned to Bank of America, National Association as successor by merger to Lasalle Bank NA trustee for the [securitization trust]" and "U.S. Bank, N.A. succeeded Bank of America, National Association as trustee for the [securitization trust]."

inauthentic signature on the 2009 assignment would at most make the assignment voidable, not void.

Finally, as for the unfair business practices cause of action, U.S. Bank argued that to the extent it was predicated on an HBOR violation or an absence of authority to foreclose, it failed for the reasons already identified. U.S. Bank also argued there were no allegations of fraud, and it did not proximately cause the losses Montez sought to remedy via this claim.

D.    *Opposition*

Montez, now appearing as a self-represented litigant,[7] filed a single document in response to the summary judgment motion. The document's first three pages largely consisted of a description of a discussion Montez had with her expert consultant, Jay Patterson, about the motion. The gist was that Patterson thought the boarding tape was " 'fake' " and did not prove the mortgage was transferred to the securitization trust. Montez also argued one of U.S. Bank's supporting declarations was "fraudulent."

Montez attached eight exhibits to the document, including some of U.S. Bank's moving evidence; an unfiled second amended complaint; and four other items. However, she did not file a separate statement in response to the separate statement filed by U.S. Bank.

---

[7]    When Montez filed the superior court action, she was represented by counsel. However, her original attorney was relieved as counsel and a second attorney later substituted in on Montez's behalf. This attorney was relieved approximately five weeks after U.S. Bank filed its summary judgment motion. The trial court continued the summary judgment hearing by three months, from January 12 to April 12, 2024, to give Montez time to find new counsel. On March 28, Montez, appearing on her own behalf, filed her response to U.S. Bank's summary judgment motion.

E.    *Reply and Objections to Evidence*

U.S. Bank replied to the opposition and filed objections to Montez's evidence.  Specifically, it objected to factual assertions in the first three pages of the document, and to all of the attached exhibits except the copies of its own evidence and the unfiled pleading.

F.    *Summary Judgment Ruling and Entry of Judgment*

Following a hearing, on April 12, 2024, the trial court issued a minute order granting U.S. Bank's judicial notice request, sustaining its evidentiary objections, and granting the summary judgment motion in its entirety.  The court ruled that summary judgment was warranted under the doctrine of res judicata because all elements of res judicata were met, including that the prior federal lawsuits "rais[ed] the same claims and arguments" as the current suit.  "As a separate and independent basis" for granting summary judgment, the court found U.S. Bank met its initial burden to show there were no triable issues of material fact with respect to the causes of action asserted by Montez, and Montez had failed to meet her opposition burden of showing a triable issue of material fact on any of her causes of action.

On May 6, 2024, the court entered judgment in favor of U.S. Bank and against Montez.[8]

---

[8]    Montez, who is representing herself on appeal, appealed from the minute order granting summary judgment rather than the judgment.  An order granting summary judgment is not an appealable order.  (*Stolz v. Wong Communications Limited Partnership* (1994) 25 Cal.App.4th 1811, 1816.)  However, in the interests of justice, we can and do construe the appeal as having been taken from the judgment rather than the order.  (*Zavala v. Arce* (1997) 58 Cal.App.4th 915, 924, fn. 7.)

DISCUSSION

Montez challenges the grant of summary judgment. We review a decision to grant summary judgment de novo. (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037.) "We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party." (*Ibid.*)

However, "although we use a de novo standard of review here, we do not transform into a trial court." (*Dinslage v. City and County of San Francisco* (2016) 5 Cal.App.5th 368, 379 (*Dinslage*) [cleaned up].) We approach a summary judgment appeal, as with any appeal, with the presumption the appealed judgment is correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; *Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 684 (*Meridian*).) Therefore, "on review of a summary judgment, the appellant has the burden of showing error, even if he did not bear the burden in the trial court." (*Dinslage,* at p. 379 [cleaned up].)

As part of the burden to show error, appellants must follow certain rules of appellate procedure. (See *DiCola v. White Brothers Performance Products, Inc.* (2008) 158 Cal.App.4th 666, 676 [" 'Generally, the rules relating to the scope of appellate review apply to appellate review of summary judgments.' "].) These rules require, among other things, that appellate briefs "[s]tate each point under a separate heading or subheading summarizing the point, and support each point by argument and, if possible, by citation of authority." (Cal. Rules of Court, rule 8.204(a)(1)(B).) Appellants must also support their claims of error with citations to evidence in the record and relevant legal authority, as well as meaningful legal analysis. (Cal. Rules of Court, rule 8.204(a)(1)(C).) "The reviewing court is not required to develop the parties' arguments or search the record for

supporting evidence and may instead treat arguments that are not developed or supported by adequate citations to the record as waived." (*Meridian, supra*, 67 Cal.App.5th at p. 684; *Fierro v. Landry's Restaurant Inc.* (2019) 32 Cal.App.5th 276, 281, fn. 5 (*Fierro*) ["appellate courts may disregard any factual contention not supported by a proper citation to the record" (cleaned up)]; *Dinslage, supra*, 5 Cal.App.5th at p. 379 [" '[A]n appellant is required to not only cite to valid legal authority, but also explain how it applies in his case.' "].) "In other words, review is limited to issues which have been adequately raised and briefed." (*Dinslage,* at p. 379 [cleaned up].) These rules apply to self-represented litigants as well as attorneys. (*Stover v. Bruntz* (2017) 12 Cal.App.5th 19, 31; *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246–1247.)

Montez fails to meet her appellate burden of showing error. Her specific contentions are that res judicata does not apply to this action, and there are triable issues of material fact precluding summary judgment. Because these were separate and independent grounds for the court's ruling, we will uphold the ruling if either ground was correct. To obtain a reversal of the judgment, Montez bears the burden of showing both grounds were erroneous. She has not met her burden. She has failed to show that the court erred when it ruled there were no triable issues of material fact precluding summary judgment.

Although Montez asserts in a heading of her opening brief that there are such triable issues, the argument underneath the heading is fatally deficient. Montez asserts that she "raised four triable issues," but does not identify them. Next, she cites the minute order ruling on U.S. Bank's demurrer to the original complaint and the minute order granting U.S.

11

Bank's motion for summary judgment[9] and requests that we "give final rulings for these issues" or "remand for more consistency." This is the entirety of her argument. It is insufficient because it does not specify any triable issues or identify evidence creating them. It is not our role to guess what issues she may be referring to, nor is it our role to develop her assertions into a cognizable appellate argument. (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1011.)

Also, the point of the argument is unsound. Contrary to Montez's apparent belief, it is not inherently problematic that the rulings on U.S. Bank's demurrer to the complaint and motion for summary judgment on the causes of action in the FAC differed. These are different procedural devices with distinct requirements. (Code Civ. Proc., §§ 430.10, subd. (e) [demurrer], 437c, subd. (c) [summary judgment].) They attacked different pleadings with factual allegations that were not identical. Given these differences, there is nothing inherently improper about the court reaching different conclusions about the factual sufficiency of Montez's causes of action on demurrer versus summary judgment.

As for the remainder of Montez's opening brief, in her "Statement of Facts" section (capitalization omitted), she has included assertions that are part fact and part argument and which seem intended to demonstrate the existence of triable issues of material fact. For several reasons, they fall short of accomplishing this goal. First, the heading of this section does not identify it as containing appellate arguments, which alone is grounds for deeming the issues forfeited. (*Roe v. McDonald's Corp.* (2005) 129

---

9  Whereas Judge Richard E. L. Strauss (Ret.) ruled on the demurrer to the complaint, Judge James A. Mangione ruled on the demurrer to the FAC and the summary judgment motion.

Cal.App.4th 1107, 1114.) And although most assertions in this section are factual, many are made on information and belief and most lack citations to supporting evidence in the record. We can and do disregard the factual assertions that are not accompanied by a reference to the record. (*Fierro*, *supra*, 32 Cal.App.5th at p. 281, fn. 5 ["appellate courts may disregard any factual contention not supported by a proper citation to the record" (cleaned up)]; *Dinslage*, *supra*, 5 Cal.App.5th at p. 379 ["An appellant who fails to pinpoint the evidence in the record indicating the existence of triable issues of fact will be deemed to have waived any claim the trial court erred in granting summary judgment."].)

This leaves only a few assertions that are supported by record citations and are worded to read like arguments. However, even these quasi-arguments are underdeveloped and unaccompanied by citations to legal authorities, and as a result we deem them forfeited. (*Dinslage*, *supra*, 5 Cal.App.5th at p. 379 [" '[A]n appellant is required to not only cite to valid legal authority, but also explain how it applies in his case.' "]; *Meridian*, *supra*, 67 Cal.App.5th at p. 684 ["The reviewing court is not required to develop the parties' arguments or search the record for supporting evidence and may instead treat arguments that are not developed or supported by adequate citations to the record as waived."].)

But even if we were to consider the assertions despite these deficiencies, we would reject them. They advance three general challenges: (1) the signature on the 2009 assignment is forged; (2) her loan was never transferred to the securitization trust; and (3) the 2009 assignment is void.

The first challenge fails, because it relies on Patterson's revised expert report discussing purported irregularities in Brignac's signature. The trial court sustained U.S. Bank's objections to this report, and Montez has not

13

challenged the court's evidentiary ruling. As a result, the report cannot be used to establish a disputed issue of material fact. (*Fritelli, Inc. v. 350 North Canon Drive, LP* (2011) 202 Cal.App.4th 35, 41 [failure to attack trial court's evidentiary rulings forfeits contentions of error regarding the rulings on appeal]; *Christina C. v. County of Orange* (2013) 220 Cal.App.4th 1371, 1378 [to avoid summary judgment, a party "must produce admissible evidence raising a triable issue of fact" (cleaned up)].)

The challenge also lacks merit. An invalid signature would at most make the 2009 assignment voidable, not void. (See, e.g., *Mendoza v. JPMorgan Chase Bank, N.A.* (2016) 6 Cal.App.5th 802, 819–820 [homeowners lack standing to challenge the validity of robo-signatures on assignments because " '[t]o the extent that an assignment was in fact robo-signed, it would be voidable, not void' "]; *Saterbak v. JPMorgan Chase Bank, N.A.* (2016) 245 Cal.App.4th 808, 814 [borrower lacked standing to pursue theory signature on assignment document as forged].) In other words, the claim of a forged signature is "not enough to set aside the foreclosure." (*Kalnoki v. First American Trustee Servicing Solutions, LLC* (2017) 8 Cal.App.5th 23, 46.)

Montez's second challenge is based on the boarding tape submitted by U.S. Bank, which includes a payment due date of "9/1/2009." Montez argues the inclusion of the payment due date shows the boarding tape was created after 2005, when U.S. Bank claims the loan was transferred to the trust. Her theory is speculative, however, because it is unsupported by evidence showing how a boarding tape is created. In the absence of such evidence, we see no reason why the boarding tape could not simultaneously document the 2005 transfer of the loan into the securitization trust as well as the September 1, 2009 payment due date. Spreadsheets, for example, are living documents that can be created at one time and updated or supplemented

14

with new information later; the update does not negate the accuracy of the original entry. We are not persuaded the inclusion of the payment due date is a smoking gun that proves the boarding tape was falsified or the 2005 loan transfer did not happen.

Montez's third challenge is based on her interpretation of the 2009 assignment as reflecting that her loan and deed of trust were assigned "from" JPMorgan Chase. The assignment is therefore void, Montez claims, because JPMorgan Chase "is not in the chain of succession" (i.e., was not a trustee of the securitization trust with a beneficial interest in the deed of trust that it could transfer). The difficulty with this position is that the 2009 assignment does not, in fact, state the beneficial interest in the deed of trust was assigned "from" JPMorgan Chase to Bank of America. Rather, it states the beneficial interest in the deed of trust was transferred "to Bank of America, National Association as successor by merger to LaSalle Bank NA as trustee for [the securitization trust]." In other words, it reflects a transfer from LaSalle Bank to Bank of America. This transfer is consistent with the PSA for the securitization trust, which specifies that "[a]ny [c]orporation into which the [t]rustee . . . may be merged . . . shall be the successor of such trustee hereunder." Also, contrary to Montez's unsupported assertion that JPMorgan Chase lacked the authority to assign rights under the deed of trust, the PSA for the securitization trust expressly provides that the mortgage servicer is authorized to appoint a successor trustee.

Finally, in her reply brief, Montez raises new arguments about the owner-occupied status of the property and the reasons for her failure to submit a complete loan modification application. She also argues for the first time that the boarding tape shows her loan was "not created" (presumably, she means not transferred) until after the securitization trust's cut-off date of

15

December 1, 2005. We decline to consider these arguments because they were raised for the first time in reply. (*United Grand Corp. v. Malibu Hillbillies LLC* (2019) 36 Cal.App.5th 142, 158; see *ibid.* [" 'Fairness militates against allowing an appellant to raise an issue for the first time in a reply brief because consideration of the issue deprives the respondent of the opportunity to counter the appellant by raising opposing arguments about the new issue.' "].) In any event, the arguments do not justify reversal of the judgment. The owner-occupied status of the property was but one of U.S. Bank's several proffered grounds for summarily adjudicating Montez's cause of action for violation of the HBOR, and she does not show the remaining grounds were also deficient. And we will not consider on appeal Montez's new factual assertions about the reasons she did not submit an application for loan modification, or about the purportedly late (as opposed to nonexistent) transfer of the loan into the securitization trust. (*Noe v. Superior Court* (2015) 237 Cal.App.4th 316, 335 [appellate courts generally will not consider an argument raised on an appeal from a grant of summary judgment "if it was not raised below and requires consideration of new factual questions" (cleaned up)].) Moreover, her claim about the lateness of the transfer depends on an interpretation of the boarding tape we have already rejected as unfounded.

For all of these reasons, Montez fails to meet her burden of showing the trial court erred when it ruled there were no issues of material fact precluding summary judgment. Because this was an independent basis for the court's ruling, we can and do affirm the judgment on this ground without

16

the need to examine the court's separate determination that the FAC was barred under the doctrine of res judicata.[10]

DISPOSITION

The judgment is affirmed.  U.S. Bank is entitled to its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

DO, J.

WE CONCUR:

DATO, Acting P. J.

CASTILLO, J.

---

[10]    We note that U.S. Bank argues in its respondent's brief that the trial court "[s]oundly" sustained the demurrer to the FAC.  (Boldface omitted.)  We have no occasion to examine this argument as Montez did not challenge the court's ruling on this demurrer in her appellate briefs.  (*Eck v. City of Los Angeles* (2019) 41 Cal.App.5th 141, 146 [ruling not challenged in appellate briefs deemed waived].)