Filed 2/19/25  Tres Caminos v. MGP XI US Properties CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| TRES CAMINOS, LP,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>MGP XI US PROPERTIES LLC,<br><br>Defendant and Respondent. | D083176<br><br><br>(Super. Ct. No. 37-2019-00056341-CU-OR-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Eddie C. Sturgeon, Judge.  Affirmed.

Vivoli Saccuzzo and Michael W. Vivoli for Plaintiff and Appellant.

Glaser Weil Fink Howard Jordan & Shapiro, Peter C. Sheridan and Steven Basileo for Defendant and Respondent.

Tres Caminos, LP (Tres Caminos) owned certain commercial real property within a shopping center.  It entered a contract to sell its property to a buyer that wanted to develop a fast food restaurant on the subject lot.  The buyer sent its plans and specifications to develop the lot to MGP XI US Properties, LLC (MGP), the manager of the shopping center.  MGP informed the buyer that it could not approve the buyer's plan at that time because it

conflicted with a lease provision with another tenant, which provided that tenant with the exclusive right to operate a retail food business within the shopping center.

The buyer attempted to obtain consent from the tenant for its project but ultimately cancelled escrow after Tres Caminos declined to extend escrow absent an additional payment from the buyer.

Tres Caminos sued MGP, among other entities, alleging causes of action for declaratory relief, intentional interference with contract, intentional interference with economic relations, breach of fiduciary duty, and breach of contract. During the lawsuit, Tres Caminos sold the subject property to a new buyer, who in turn, sold the property to a different party that is developing the lot for a restaurant.

MGP successfully demurred, in part, to the operative complaint resulting in a dismissal of Tres Caminos's declaratory relief and breach of contract causes of action. The court subsequently granted MGP's motion for summary judgment as to the remaining claims.

Tres Caminos appeals, contending the trial court erred in granting summary judgment because triable issues of fact exist as to its claims for intentional interference with contract, intentional interference with economic relations, and breach of fiduciary duty. In addition, Tres Caminos asserts the court erred in granting the demurrer as to the breach of contract cause of action. We are not persuaded by Tres Caminos's arguments and thus affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

This dispute primarily involves two lots that are part of the Sweetwater Town & Country Shopping Center (Shopping Center). The Shopping Center was developed in the 1970s. Each of the properties within

2

the Shopping Center is subject to a "Declaration of Restrictions and Grant of Easements" recorded on December 10, 1976. That declaration has been amended multiple times, including an amendment recorded May 11, 2017, that named MGP as the "Successor Declarant" under the original declaration, making MGP the manager of the Shopping Center as well. Also, the amended declaration indicated that MGP acquired nine of the 11 lots comprising the Shopping Center. In addition, as manager, MGP was tasked with maintaining overall quality standards for buildings and improvements within the Shopping Center by reviewing improvement plans and specifications. No improvements can occur on any lot prior to MGP's approval, which MGP shall not unreasonably withhold.

On one of the lots in question, Carl's Jr. Restaurant, LLC (Carl's Jr.) operates a fast food restaurant, which it has leased directly from the owner since 1978. The other lot at issue is Lot No. 10 (Lot 10), which Tres Caminos purchased in June 2004.[1] Although various restaurants have existed on Lot 10 since the Shopping Center's inception, around 2004, the building on that lot was used for a medical office.

In June 2018, Tres Caminos began publicly marketing Lot 10 for sale through Charles Adolphe, a licensed real estate broker. Two months later, Tres Caminos signed a purchase and sale agreement to sell Lot 10 for $3,125,000 to Becker Properties, LLC (Becker) and opened escrow on that transaction. The parties later revised the sale price to $2,500,000.

---

[1] Another lot that tangentially comes into play in the instant dispute is leased by Longs Drug Stores California, LLC (Longs). Longs operates a drug store on that lot.

In November of 2018, MGP's Vice President, Katy Noel, was informed through a broker, John Jennings, that Lot 10 was for sale. On December 11, 2018, Noel sent an e-mail to Kori Murphy in MGP's acquisitions department which stated, "Do you want me to reach out to the seller? If we can get control at a price that works for us[,] I think it's may be worth a phone call. I think it might be under[ ]contract?"

On January 8, 2019, Murphy responded and asked, "Do you think the play would be to keep [the] medical office (in which case not sure it makes sense for us to pursue) or would we knock down and ground lease to a retail user? What are your thoughts on a retail use in this location?" The next day, Noel responded, "It's possible to do a drive thru or potentially tear down to creat[e] more parking for the pad building . . . ."

On January 11, 2019, Becker's president sent an e-mail to MGP disclosing that Becker was in escrow to purchase Lot 10, which it intended to redevelop as a fast food restaurant. In addition, Becker indicated that it "wanted to run the site plan by [MGP] since we are going to be neighbors to see if you have any comments." The e-mail was forwarded to Noel, who forwarded the e-mail to Murphy. Noel and Murphy then engaged in the following e-mail exchange between January 11 and 14, 2019:

> "[Noel:] Looks like someone beat us to the punch and they are in escrow on the office building and plan on tearing it down and put in [In-N-Out] Burger."

> "[Murphy:] Yes, spoke to the owner it is tied up, although he is unsure if the buyer is going to execute. Do they have a lease signed with [In-N-Out]? What rent do you think In-N-Out pays here[?]"

> "[Noel:] I don't know if signed but I can confirm. Carl's Jr. has an exclusive but can't recall how it reads. It's unusual."

4

"[Murphy:] Katy- in case the buyer falls out, what do you think ground rent is here?"

"[Noel:] We were at $135, $140,000 with Del Taco[.] I would think an [In-N-Out] [is] probably around $175,000."

"[Murphy:] Yea, based on that rent we likely could only pay $1.5M and the deal is tied up at $3.2M. Perhaps the buyer is looking at immediately selling at a low cap (4-4.5%) once tenant is in-place, which might be how they are willing to pay twice as much!"

"[Noel:] Yeah that's quite a spread."

"[Noel:] I reread the Carl's Jr. exclusive and it wouldn't allow us to lease the property to [In-N-Out]."

"[Murphy: Is it exclusive to [In-N-Out] specifically? Or any fast food chain?"

"[Noel:] Just burgers."

On April 3, 2019, Becker, through its outside counsel, sent a letter to MGP requesting that MGP, as the manager of the Shopping Center, approve its plans and specifications for the development of an In-N-Out Burger restaurant on Lot 10. On April 26, 2019, MGP's counsel responded to Becker's request in writing (the April 26 Letter). MGP's counsel advised Becker's counsel that, based on his reading of the relevant documents, MGP "cannot approve the Proposed Plan unless and until your client first obtains Carl's Jr.'s written approval of your client's Proposed Plan and the waiver of the Carl's Jr. Exclusive."[2] MPG counsel's also notified Becker's counsel about a covenant in Longs's lease, which required its consent for any changes

---

[2] The Carl's Jr. Exclusive is based on the following language in section 22 of Carl's Jr.'s lease: "Lessor agrees not to lease or sell any adjacent property which it owns for a competing retail food business, or to a beer bar-type establishment."

5

made to the flow of pedestrian and vehicular traffic within the Shopping Center.

Although Becker expressed doubt whether the Carl's Jr. Exclusive was enforceable, it nonetheless tried, over several months, to obtain Carl's Jr.'s consent to the development of an In-N-Out restaurant on Lot 10. When its efforts proved unsuccessful, on June 18, 2019, Becker informed Adolphe that it would not make any further payments to keep escrow open but would continue to try to obtain permission from Carl's Jr. if Tres Caminos was willing to leave escrow open.

Two days later, Adolphe told Becker that Tres Caminos would only keep escrow open if Becker paid an additional $12,000, which would be immediately released to Tres Caminos. If Becker was not willing to make that payment, Adolphe advised Becker to cancel escrow. In response, Becker pointed out that it was still attempting to obtain Carl Jr.'s permission, but the proposed timetable was too aggressive: "It's difficult to get things done that quickly." Thus, Becker agreed to cancel escrow.[3]

After Becker terminated escrow, Adolphe reached out to MGP to inquire whether it was interested in purchasing Lot 10. MGP was not.

In mid-2021, Tres Caminos received an offer from Filex Sanchez, an attorney affiliated with a company called ULG Holdings LLC (ULG), to buy Lot 10 for $1,995,000. Near the closing of that deal, Tres Caminos received an offer from another entity interested in buying Lot 10 for $2,400,000 and developing a restaurant there. In response, Tres Caminos gave this entity seven days to obtain approval from MGP and Carl's Jr. When the entity did

---

[3]     For its part, Tres Caminos admitted that it believed that, if its deal with Becker terminated, it would receive additional purchase offers, some that would be as good as or better than the $2.5 million Becker offered.

not satisfy that requirement, Tres Camino then sold Lot 10 to Sanchez in July 2021. However, neither Sanchez nor ULG ever occupied or developed Lot 10. Instead, Lot 10 was sold to Teas LX LLC in 2022 for $2.7 million and is being developed as a Texas Roadhouse restaurant.

Tres Caminos filed suit against MGP on October 23, 2019 for declaratory relief. MGP answered the complaint. Per MGP's assertion, Tres Caminos added Carl's Jr. and Longs as Doe defendants.

Tres Caminos then filed a motion for leave to file an amended complaint and a motion for summary adjudication on the declaratory relief claim, seeking a judicial declaration that, among other things, that neither the Carl's Jr. Exclusive nor any restrictions in Longs's lease applied to Lot 10. The trial court denied Tres Caminos's motion for summary adjudication but granted the motion for leave to file an amended complaint.

Tres Caminos filed a first amended complaint, but in response to a demurrer filed by MGP, Tres Camino filed a second amended complaint. In that complaint, Tres Caminos alleged causes of action for declaratory relief, intentional interference with contract, intentional interference with economic advantage, breach of fiduciary duty, and breach of contract. MGP filed a demurrer to the second amended complaint.

The court sustained MGP's demurrer in part and overruled it in part. In doing so, the court sustained the demurrer without leave to amend as to the declaratory relief action, finding that Tres Caminos lacked standing because it no longer owned Lot 10. Also, the court concluded that the breach of contract claim could not stand because Tres Caminos had not explained how MGP breached its contractual obligations by failing to approve a third party's development plans. However, the court overruled MGP's demurrer as to the remaining causes of action.

7

MGP subsequently filed a motion for summary judgment as to the remaining causes of action. Tres Caminos opposed the motion for summary judgment, and MGP filed a reply, including objecting to certain evidence offered by Tres Caminos.

After considering the papers and evidence filed as well as entertaining oral argument, the court granted the motion for summary judgment. In doing so, the court concluded Tres Caminos: (1) could not show that MGP's actions caused a disruption with Tres Caminos's agreement with Becker; (2) could not prove that MGP intended to disrupt the relationship between Becker and Tres Caminos or knew that disruption of the relationship was certain or substantially certain to occur; and (3) had not established the existence of (let alone a breach of) a fiduciary duty MGP owed to Tres Caminos. In granting the motion for summary judgment, the court sustained all of MGP's evidentiary objections.

Tres Caminos timely filed a notice of appeal.

DISCUSSION

I.

SUMMARY JUDGMENT

A. Standard of Review

" 'A trial court properly grants summary judgment where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law.' [Citation.] The materiality of a disputed fact is measured by the pleadings [citations], which 'set the boundaries of the issues to be resolved at summary judgment.' " (*Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1250.)

" '[T]he party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable

8

issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact.' [Citation.] 'A prima facie showing is one that is sufficient to support the position of the party in question.' [Citation.] 'There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof.' " (*Beltran v. Hard Rock Hotel Licensing, Inc.* (2023) 97 Cal.App.5th 865, 877.)

We review de novo an order granting summary judgment. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860.) " '[W]e examine the facts presented to the trial court and determine their effect as a matter of law.' [Citation.] We review the entire record, 'considering all evidence set forth in the moving and opposition papers except that to which objections have been made and sustained.' [Citation.] Evidence presented in opposition to summary judgment is liberally construed, with any doubts about the evidence resolved in favor of the party opposing the motion." (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618 (*Regents*).)

### B.  Analysis

Even on de novo review, "the appellant must frame the issues for us, show us where the superior court erred, and provide us with proper citations to the record and case law." (*Morgan v. Imperial Irrigation Dist.* (2014) 223 Cal.App.4th 892, 913.) Moreover, " ' "[o]n review of a summary judgment, the appellant has the burden of showing error, even if he did not bear the burden in the trial court. [Citation.] . . . . 'As with an appeal from any judgment, it is the appellant's responsibility to affirmatively demonstrate

9

error and, therefore, to point out the triable issues the appellant claims are present by citation to the record and any supporting authority.  In other words, review is limited to issues which have been adequately raised and briefed.' [Citation.]" [Citation.]' " (*Dinslage v. City and County of San Francisco* (2016) 5 Cal.App.5th 368, 379 (*Dinslage*).)

In the opening brief, Tres Caminos refers to the trial court's three primary conclusions supporting its order granting the motion for summary judgment and then attempts to explain how the court erred in each of those conclusions.[4]  However, as we explain *post*, at times Tres Caminos simply ignores the trial court's reasoning, and in doing so, fails to provide appropriate legal authority or citations to the record to support its assertion that a triable issue of material fact exists.  In those instances, Tres Caminos fails to satisfy its burden on appeal to demonstrate error.  (See *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [concluding one of the fundamental principles of appellate procedure is that a trial court's judgment or order is presumed correct and error must be affirmatively shown by the appellant].)

Below, the trial court found that Tres Caminos could not prove causation because there was no evidence that MGP's actions caused disruption with Tres Caminos's contract or economic relationship with

---

[4]     In addition, Tres Caminos argues that the trial court improperly weighed the evidence in granting the motion for summary judgment.  We summarily reject this argument.  The court did not weigh the evidence.  It did exclude some evidence, but Tres Caminos does not challenge any evidentiary rulings on appeal.  Moreover, as we will explain in more detail *post*, Tres Caminos is essentially claiming the court should have made certain speculatory inferences that MGP was engaging in untoward conduct that the trial court determined were not appropriate under the evidence submitted.  We agree with the trial court's prudent and reasoned approach below.

Becker.[5]  Specifically, the court concluded that Tres Caminos based its two interference claims "almost entirely" on e-mails wherein MGP's agent mentioned that " 'someone beat us to the punch' " and the April 26 Letter wherein MGP's counsel provided a legal interpretation of the relevant lease covenants.  The court noted that "[t]he undisputed evidence shows that . . . MGP's legal opinion did not unequivocally deny approval but instead stated that under its reading of the covenants, Becker would be required to first obtain waivers from [Longs] and Carl's Jr. prior to any approval."  The court further concluded that the undisputed evidence "show[ed] that Becker sought to obtain such waivers [citations] and additional time with which to obtain them but [Tres Caminos] denied any extensions on the escrow without further payment [citations]."  Therefore, the court found that it was Tres Caminos's "ultimatum that caused an end to the agreement between Becker and [Tres Caminos], not any conduct by . . . MGP."

---

[5]     The elements of a cause of action for intentional interference with contract are:  (1) a valid contract between plaintiff and a third party; (2) defendants' knowledge of the contract; (3) defendants' intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage.  (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 55 (*Quelimane*).)  The elements of intentional interference with prospective economic advantage are "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." (*Youst v. Longo* (1987) 43 Cal.3d 64, 71, fn. 6 (*Youst*).)  For the latter cause of action only, the "plaintiff also must prove that the interference was wrongful, independent of its interfering character. [Citation.]" (*Edwards v. Arthur Andersen LLP* (2008) 44 Cal.4th 937, 944.)

11

Tres Caminos asserts the trial court erred making the above findings in the face of the "veritable cornucopia of evidence that created a triable issue of fact on each aspect of MGP's motion, requiring that it be denied." We do not find Tres Caminos's evidence abundant or its arguments persuasive.

For example, Tres Caminos heavily relies on Adolphe's declaration wherein he stated that "Becker cancelled its contract with Tres Caminos because of the position taken by MGP as it concerns its plans for the redevelopment of Lot 10 in the Shopping Center." Yet, Tres Caminos ignores the fact that MGP objected to this very statement in Adolphe's declaration, and the court sustained that objection. Thus, on appeal, we cannot consider this portion of Adolphe's declaration.[6] (See *Regents, supra*, 4 Cal.5th at p. 618.) Consequently, Adolphe's inadmissible statement that Becker cancelled its contract with Tres Caminos because of MGP's actions cannot create a triable issue of fact.

Even without Adolphe's statement, Tres Caminos attempts to create a disputed issue of material fact by cobbling together pieces of evidence to support the theory that MGP wanted to purchase Lot 10 and thus "manufactured [a] basis for denying consent to Becker's use of Lot 10" to ultimately drive down the sale price of the lot. According to Tres Caminos, this fabricated excuse was the Carl's Jr. Exclusive. Yet, this theory of unseemly conduct is undermined by the evidence before us.

MGP did not create the Carl's Jr. Exclusive out of whole cloth. In fact, it is undisputed that the Carl Jr.'s Exclusive is based on language contained

---

[6]    Tres Caminos does not challenge any evidentiary rulings on appeal. Even if it did, we would agree with the trial court that Adolphe's declaration as to the reasons Becker terminated escrow is speculative on its face. Such speculation cannot create a triable issue of fact. (See *Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 99 (*Knapp*).)

12

in Carl's Jr.'s lease.  E-mails show that MGP representatives discussed the Carl's Jr. Exclusive and determined that it would not allow MGP to lease Lot 10 to In-N-Out if MGP purchased that lot.  That discussion occurred before Becker's counsel sent a letter to MGP asking it to approve Becker's plans to develop an In-N-Out restaurant.  Moreover, in the April 26 letter, MGP's outside counsel explained the Carl's Jr. Exclusive and provided supporting documents.

Here, Tres Caminos all but ignores this evidence while claiming that MGP's failure to contact Longs about possible parking issues with the development of Lot 10 as an In-N-Out restaurant shows MGP "elevated" "its manufactured misinterpretation of the 'Carl's Jr. [E]xclusive.' "  We fail to see how MGP not contacting Longs about potential parking issues somehow undermines MGP's belief that the Carl's Jr. Exclusive was valid.  Indeed, MGP explained that it believed contacting Longs would have been premature without Carl's Jr. agreeing to the development of an In-N-Out restaurant.

Additionally, Tres Caminos's argument that the Carl's Jr. Exclusive was not enforceable because of a lack of notice does not help its cause here.  That argument would have been important if the validity of the exclusive was ever litigated.  However, it does not support Tres Caminos's claim that MGP manufactured the Carl's Jr. Exclusive and thus interfered with Tres

Caminos's contract and economic relationship with Becker by offering a bogus reason not to approve Becker's development plans.[7]

In summary, Tres Caminos has offered no admissible evidence supporting its argument that MGP's actions led to Becker cancelling escrow. Further, Tres Caminos's theory that MGP manufactured the Carl's Jr. Exclusive is mere speculation, which cannot create a triable issue of fact to defeat a motion for summary judgment. (See *Knapp, supra*, 123 Cal.App.4th at p. 99.) Finally, we agree with the trial court that, based on the admissible evidence in the record, it appears that Becker backed out of its deal with Tres Caminos because Tres Caminos demanded Becker pay an additional $12,000 to keep escrow open, despite the fact that Becker remained optimistic and determined to obtain Carl's Jr.'s permission to develop an In-N-Out on Lot 10 but could not do so on the schedule Tres Camino demanded. Accordingly, Tres Caminos cannot establish that any of MGP's acts interfered with its

---

[7] We observe that, in the opening brief, Tres Caminos cursorily refers to arguments it made in its motion for summary adjudication, challenging MGP's interpretation of the Carl's Jr. Exclusive. Further, Tres Caminos implies that its contentions below somehow create a triable issue of fact that we should consider on appeal. However, Tres Caminos does not develop these assertions beyond its brief and generic mention of them in the context of its motion for summary adjudication (which is not at issue on appeal). It is not our role as an appellate court to independently review the record for error and to construct arguments for appellant that would require reversal. (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153.) Without more, Tres Caminos bald reference to unexplained arguments it made in its summary adjudication below are no help to its position here.

contract or economic relationship with Becker. For this reason alone, we affirm the judgment.[8]

The trial court also found that Tres Caminos could not prove that MGP intended to disrupt the relationship between Becker and Tres Caminos or knew that the disruption of the relationship was certain or substantially certain to occur. (See *Quelimane, supra*, 19 Cal.4th at pp. 55, 77; *Youst, supra*, 43 Cal.3d at p. 71, fn. 6.) To this end, the court noted that the April 26 Letter merely stated that certain waivers needed to be obtained, not that they could not be obtained. Moreover, the court observed that MGP could not control whether Longs or Carl's Jr. would provide waivers, and although it made reasonable inferences in favor of Tres Caminos, the court did "not find it reasonable to infer that [MGP] had ulterior or nefarious motives on the facts presented." Finally, the court found that there was no evidence that MGP knew of the specific terms of the contract between Becker and Tres Caminos or knew that the contract would fall through if an In-N-Out restaurant could not be developed on Lot 10.

In arguing that the trial court erred in making the above findings, Tres Caminos relies on the same evidence it did in arguing the trial court erred in finding a lack of causation. Therefore, Tres Caminos insists that the subject evidence shows that MGP intended to disrupt the subject contract "for the

---

8      Although we shall address the breach of fiduciary duty claim in more detail *post*, Tres Caminos's claim of such a breach also was based on its theory that MGP manufactured the Carl's Jr. Exclusive to drive down the price of Lot 10 so it could purchase the lot itself. Because the allegations of the breach of fiduciary claim mirror the two interference claims, the breach of fiduciary claim would fail for the same reasons we discussed *ante*. In other words, causation is an element of a breach of fiduciary duty claim (see *Stanley v. Richmond* (1995) 35 Cal.App.4th 1070, 1086 (*Stanley*), and Tres Caminos cannot show that any act by MGP caused any damages under a breach of fiduciary theory.

very obvious purpose of enabling MGP to acquire the property in place of Becker for its own enrichment." Again, Tres Caminos's argument relies on the speculation that MGP manufactured the Carl's Jr. Exclusive to thwart the sale of Lot 10 to Becker so that MGP could purchase the lot for a lower price. As we explained *ante,* we concluded Tres Caminos did not submit any admissible evidence to support its theory. Accordingly, we determine that Tres Caminos has not shown that a triable issue of material fact exists as to whether MGP intended to interfere with the contract and/or economic relationship between Tres Caminos and Becker.

Additionally, we note that the trial court found there was no evidence that MGP knew that the sale of Lot 10 to Becker was completely contingent on the development of an In-N-Out restaurant. Tres Caminos has not cited to the record where any evidence could establish that element. For this additional reason, Tres Caminos has not carried its burden on appeal. (See *Yield Dynamics, Inc. v. TEA Systems Corp.* (2007) 154 Cal.App.4th 547, 557 ["an appellant must do more than assert error and leave it to the appellate court to search the record and the law books to test his claim. The appellant must present an adequate argument including citations to supporting authorities and to relevant portions of the record"]; *Dinslage, supra,* 5 Cal.App.5th at p. 379 ["An appellant who fails to pinpoint the evidence in the record indicating the existence of triable issues of fact will be deemed to have waived any claim the trial court erred in granting summary judgment"].)

Finally, in finding that the motion for summary judgment was well taken as to the claim for breach of fiduciary duty,[9] the court offered two justifications. First, it noted that, in an attempt to establish the existence of a fiduciary duty owed by MGP to Tres Caminos, Tres Caminos improperly relied on cases construing fiduciary duties owed regarding common interest developments under the Davis–Stirling Common Interest Development Act.[10] Second, the court observed that even if MGP did owe Tres Caminos a fiduciary duty to consider development plans in good faith, that duty was pursuant to and defined by the applicable contract. Because the court had concluded no breach of contract occurred when it sustained MGP's demurrer to the breach of contract cause of action, it determined that any breach of fiduciary claim based on the alleged contractual breach necessarily failed.

Here, Tres Caminos does not sufficiently address the trial court's conclusion that it improperly relied on the cases construing the Davis-Stirling Act to establish that MGP owed it a fiduciary duty. Indeed, Tres Caminos

---

[9] "The elements of a cause of action for breach of fiduciary duty are: (1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach." (*Stanley, supra*, 35 Cal.App.4th at p. 1086.)

[10] The Davis-Stirling Common Interest Development Act, commonly known as the Davis-Stirling Act, governs an action to enforce recorded CC&R's of a common interest development. (Civ. Code, §§ 4000–6150.) "[A] common interest development is created 'whenever a separate interest coupled with an interest in the common area or membership in [an] association is, or has been conveyed' and a declaration, a condominium plan, if one exists, and a final or parcel map are recorded. [Citation.]" (*Villa De La Palmas Homeowners Assn. v. Terifaj* (2004) 33 Cal.4th 73, 81.) Common interest developments are required to be managed by a homeowners association, which is defined as a nonprofit corporation or unincorporated association created for the purpose of managing a common interest development, and homeowners are generally mandated to join. (*Ibid.*)

17

fails to discuss the Davis-Stirling Act in any detail or explain how the cases it relied on in opposing the motion for summary judgment below support its argument that MGP owed Tres Caminos any fiduciary duty. Instead, Tres Caminos assures us that it cited to "a wealth of authorities holding that a common area manager like MGP owes fiduciary duties to all other owners within a center over which the declarant retains a discretionary decision-making authority." And although Tres Caminos does cite to three cases purportedly supporting its argument, it offers no explanation how those cases involving residential property and homeowners' association are applicable to a commercial property that is not governed by a homeowners' association.[11] This is fatal to its argument that the court erred in granting the motion for summary judgment as to the breach of fiduciary claim.[12] (See *Dinslage, supra,* 5 Cal.App.5th at p. 379.) Moreover, in the only case on which Tres Caminos relies that concerned an alleged breach of fiduciary duty based on a claim of a third party against a homeowners' association, the court found the association did not owe a fiduciary duty to the third party because he was a prospective purchaser and not a member of the association. (*Kovich, supra,* 41 Cal.App.4th at pp. 867–868.) In this sense, *Kovich* undermines Tres Caminos's argument that MGP owed it a fiduciary duty here to approve

[11]   The cases on which Tres Caminos relies are *Cohen v. Kite Hill Community Assn.* (1983) 142 Cal.App.3d 642, *Kovich v. Paseo Del Mar Homeowners' Assn.* (1996) 41 Cal.App.4th 863 (*Kovich*), and *Ostayan v. Nordhoff Townhomes Homeowners Assn., Inc.* (2003) 110 Cal.App.4th 120.

[12]   Tres Caminos argues that the trial court's analysis that there could be no breach of fiduciary duty because it found no breach of contract was incorrect because the trial court erred in sustaining the demurrer as to the contract cause of action. Because we conclude *post* that Tres Caminos's challenge to the demurrer lacks merit, this argument regarding the fiduciary duty claim necessarily fails as well.

Becker's development plans.  Accordingly, we conclude the trial court did not err in granting MGP's motion for summary judgment.[13]

## DEMURRER

## II.

### A.  Standard of Review

A demurrer tests the legal sufficiency of a pleading.  (Code Civ. Proc., § 430.30, subd. (a); *Donabedian v. Mercury Ins. Co.* (2004) 116 Cal.App.4th 968, 994.)

"On appeal from an order of dismissal after an order sustaining a demurrer, the standard of review is de novo: we exercise our independent judgment about whether the complaint states a cause of action as a matter of law." (*Stearn v. County of San Bernardino* (2009) 170 Cal.App.4th 434, 439.) As we do so, we assume the truth of the petition's properly pleaded facts and judicially noticed matters.  (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 (*Schifando*).)  "We do not, however, assume the truth of contentions, deductions, or conclusions of law." (*Stearn*, at p. 440.)  To prevail, "the appellant must show that the facts pleaded are sufficient to establish every element of a cause of action and overcome all legal grounds on which the trial court sustained the demurrer.  [Citation].  We will affirm the ruling if there is any ground on which the demurrer could have been properly

---

[13]    The trial court also found summary judgment appropriate because Tres Caminos could not show that MGP committed an independently wrongful act beyond the interference itself.  (See *Edwards v. Arthur Andersen LLP*, *supra*, 44 Cal.4th at p. 944.)  On appeal, Tres Caminos contends that its evidence supporting its claim of breach of fiduciary duty created a triable issue of fact regarding the independently wrongful act element.  Because we conclude that Tres Caminos has not offered any evidence creating a disputed issue of material fact as to any of the elements of a breach of fiduciary duty, we find Tres Caminos's argument here is not of the moment.

sustained." (*Intengan v. BAC Home Loans Servicing LP* (2013) 214 Cal.App.4th 1047, 1052.) If the pleading is insufficient on any ground specified in a demurrer, we will uphold the order sustaining the demurrer, even if it is not the ground relied upon by the trial court. (*Debro v. Los Angeles Raiders* (2001) 92 Cal.App.4th 940, 946.)

### B. Analysis

Below, the court sustained MGP's demurrer as to the breach of contract cause of action because Tres Caminos "has not adequately provided any evidence of how [MGP] breached its contractual obligation by failing to approve the third-party's plans." On appeal, Tres Caminos focuses on the trial court's use of the word "evidence" in its order and correctly notes at the demurrer stage, a plaintiff bears no burden of providing evidence to support its causes of action. Rather, as Tres Caminos suggests, the court's analysis is limited to the pleadings and any matter to which it has taken judicial notice. (See *Schifando, supra*, 31 Cal.4th at p. 1081.)

We agree with Tres Caminos that the trial court's use of the word "evidence" in sustaining the demurrer as to the breach of contract cause of action was inappropriate. However, that mistake does not automatically carry the day for Tres Caminos. Rather, Tres Caminos " 'bears the burden of demonstrating that the trial court erroneously sustained the demurrer as a matter of law.' " (*Sui v. Price* (2011) 196 Cal.App.4th 933, 938.) And because a demurrer tests the sufficiency of the allegations in the complaint, it logically follows that, an appellant challenging an order sustaining a demurrer should explain how its allegations satisfy each of the elements of the subject cause of action.

Nonetheless, Tres Caminos utterly fails to explain how its allegations in the second amended complaint stated a valid breach of contract claim.

20

Instead, it simply tells us to assume that it had sufficiently pleaded such a cause of action: "And, because Tres Caminos' Second Amended Complaint adequately alleged each of the elements required to establish a cause of action for breach of contract . . . , MGP's demurrer to Tres Caminos' Fifth Cause of Action was required to be overruled." Even with Tres Caminos providing a citation to the second amended complaint to "support" its contention, its argument here falls well short of its burden on appeal. Essentially, it just baldly asserts that it pleaded a valid breach of contract cause of action and that we can look at the complaint ourselves to confirm. This is not our role. We do not scour the record to develop an appellant's arguments or find error. (See *WFG National Title Ins. Co. v. Wells Fargo Bank, N.A.* (2020) 51 Cal.App.5th 881, 894.) For this reason alone, we would affirm the trial court's order sustaining the demurrer as to the breach of contract cause of action.

Moreover, even if we were to look further into Tres Caminos's allegations, we would nonetheless agree with the trial court that Tres Caminos has not stated a valid cause of action for breach of contract. As MGP points out, Tres Caminos's claim of breach focuses on MGP's failure to approve Becker's plans to develop an In-N-Out restaurant on Lot 10 *before* it purchased the lot. Tres Caminos claims MGP's actions constitute a breach of one of the various declarations that govern the Shopping Center. Indeed, in its reply brief here, Tres Caminos cites to a provision of the Second Supplemental Declaration of Restrictions and Grant of Easements (Second Supplemental Declaration), recorded November 1, 1985, claiming that declaration shows that MGP, as the Successor Declarant and manager of the Shopping Center, owed a contractual duty to Becker as a "proposed 'successor' " to Tres Caminos. This argument mirrors the allegations of the

21

second amended complaint wherein Tres Caminos avers that MGP is contractually required to consider architectural requests of the owners of the lots in the Shopping Center as well as their "actual or potential assigns." Because at the time Becker submitted its plans to MGP it had not purchased Lot 10 (and never did so), it was, at most, a potential successor or assign. Yet, none of the sections of the Second Supplemental Declaration on which Tres Caminos relies requires MGP to consider any architectural plans submitted by a third party, even if that third party is in contract to possibly purchase a lot within the Shopping Center. At most, the Second Supplemental Declaration explains the process of architectural approvals, and reiterates that the declaration would "preserve and continue the general plan of improvement and operation of the Shopping Center . . . for the benefit of such parties and all owners of all or any portion of the real property subject thereto."

In addition, the Second Supplemental Declaration makes clear that its "limitations, covenants, conditions, restrictions, easements, liens and charges . . . run with title to the land and shall be binding on, and inure to the benefit of, all parties *having* or *acquiring* any right, title or interest in any portion of the Shopping Center and their respective tenants, heirs, legal representatives, successors and assigns." (Italics added.) Thus, we read nothing in the Second Supplemental Declaration that gives rise to any contractual duty to a potential owner or an entity that has entered into a contract to purchase a lot in the Shopping Center but does not yet have any interest in that lot. Alternatively stated, Tres Caminos has not shown us any agreement that established a contractual relationship between Becker and MGP.

22

Finally, in a footnote in its opening brief, Tres Caminos asserts that because MGP failed to respond to Becker's request to approve its plans "within the time frame *required* by the governing documents, . . . MGP undeniably 'breached' the agreement in question." Putting aside the fact that Tres Caminos relegates this argument to a mere footnote without any citation to the record or pertinent legal authority, we are not persuaded by the merits of this contention. As a threshold matter, we note that Tres Caminos did not allege that MGP breached any agreement by failing to provide a timely response. Thus, at best, it appears Tres Caminos is implying that it could allege additional facts to state a valid breach of contract cause of action. But Tres Caminos fails to explain how this additional allegation of breach could constitute a valid breach of contract claim. (See *Feliz v. County of Orange* (2023) 91 Cal.App.5th 927, 932–933 [the appellant " ' "has the burden to show either the demurrer was sustained erroneously or that to sustain the demurrer without leave to amend constitutes an abuse of discretion" ' "]).) After all, it appears Tres Caminos is faulting the timeliness of the April 26 Letter in which MGP's counsel explains why MGP cannot approve Becker's proposed development of Lot 10. However, underlying that claim of breach is the assumption that MGP owed a contractual duty to Becker. As we discussed *ante*, Tres Caminos has not established any basis on which such a contractual relationship existed. Therefore, we conclude Tres Caminos's timeliness allegation does not save its breach of contract claim.

In short, as the breach of contract claim hinges entirely on a contractual duty MGP allegedly owed Becker, we conclude the trial court did not err in sustaining the demurrer as to that cause of action.

DISPOSITION

The judgment is affirmed.  MGP is entitled to its costs on appeal.


HUFFMAN, J.

WE CONCUR:


McCONNELL, P. J.


CASTILLO, J.