Filed 7/29/25  Szeto v. EQD CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| GENE SZETO,<br><br>    Plaintiff, Cross-defendant, and Appellant,<br><br>        v.<br><br>EQD, LLC, et al.,<br><br>    Defendants, Cross-complainants, and Respondents. | G063969<br><br>(Super. Ct. No. 30-2019-01087212)<br><br>ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING; NO CHANGE IN JUDGMENT |

It is ordered that the opinion filed herein on July 1, 2025, be modified as follows:

On pages 4 to 5, footnote 2 shall be deleted. This will require renumbering of all subsequent footnotes.

This modification does not effect a change in judgment.

The petition for rehearing is DENIED.


                                        SCOTT, J.

WE CONCUR:


MOTOIKE, ACTING P. J.


DELANEY, J.

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| GENE SZETO,<br><br>Plaintiff, Cross-defendant, and Appellant,<br><br>v.<br><br>EQD, LLC, et al.,<br><br>Defendants, Cross-complainants, and Respondents. | G063969<br><br>(Super. Ct. No. 30-2019-01087212)<br><br>O P I N I O N |

Appeal from orders of the Superior Court of Orange County, John C. Gastelum, Judge. Affirmed in part, reversed in part, and remanded.

Law Offices of Shun C. Chen and Shun C. Chen for Plaintiff, Cross-defendant, and Appellant.

Balonick Law Office and Barney Balonick for Defendants, Cross-complainants, and Respondents EQD, LLC and Kent Salveson.

Greenberg Glusker Fields Claman & Machtinger, Fred A. Fenster and Ricardo P. Cestero for Defendant, Cross-complainant, and Respondent Sung Yi.

\* \* \*

Plaintiff Gene Szeto appeals from orders denying his anti-SLAPP motions to strike claims for declaratory relief, reimbursement, and unfair business practices in the cross-complaints filed by defendants Sung Yi, Kent Salveson, and EQD, LLC. We largely affirm the orders, as the claims for declaratory relief and reimbursement do not arise from protected activity. But Salveson's and EQD's unfair business practices claim does arise from protected activity—Szeto's filing of his first amended complaint—and Salveson and EQD have not shown a probability of prevailing on that claim. As a result, that cause of action must be stricken.

## FACTS

We take some streamlined facts from the first amended complaint, cross-complaints, declarations, and other evidence submitted on the motions. (Code Civ. Proc.,[1] § 425.16, subd. (b)(2).)

### I.

#### THE UNPAID LOANS AND

#### THE RESULTING LAWSUITS AND PROPERTY TRANSFERS

This case arises from the nonpayment of two loans issued to Steve Yuk Woo and his corporation in 2014. First, Woo borrowed $100,000 from Szeto, a former business associate, to be paid back within 60 days. Woo failed to pay back any portion of the loan.

---

[1] All further undesignated statutory references are to this code.

Second, Woo's corporation borrowed $250,000 from a bank, with Woo and Yi (Woo's longtime friend) each signing a personal guaranty. The corporation soon defaulted on the loan and filed for bankruptcy. This caused the bank to declare the loan in default and accelerate the amount due.

These defaults led to multiple lawsuits. First, Szeto filed a lawsuit against Woo in San Bernardino Superior Court for breaching the $100,000 promissory note, and Woo cross-complained against Szeto for usury, defamation, conversion, and various other claims.

Second, the bank filed a lawsuit in Orange County Superior Court against Yi and Woo, as guarantors of the corporation's loan, to recover the loan principle, interest, and attorney fees.

Yi and Woo agreed to settle the bank's claims for $321,000. To fund the settlement, Yi borrowed money from Salveson, an attorney who had reportedly represented Woo in his bankruptcy.

Woo lacked the financial means to contribute to the bank settlement, so to reimburse Yi, Woo transferred his ownership of two real properties—a New York condo and a Seattle rental property—to his limited liability company, EQD, and then transferred his interest in EQD to Yi. At the time of these transfers, Yi was unaware of Woo's unpaid debt to Szeto.

Yi did not hold EQD for long. About a year later, he transferred his interest in EQD to Salveson in order to repay amounts owed from the bank settlement and other advances. Salveson later quitclaimed the New York condo from EQD to himself.

Meanwhile, in 2019, Szeto obtained a $194,438.35 judgment against Woo in the San Bernardino case, recovering the original $100,000 debt plus interest, costs, and attorney fees; Woo recovered nothing on his

3

cross-complaint against Szeto. Woo refused to pay any portion of the judgment.

## II.

### THIS LITIGATION

Apparently unable to collect the San Bernardino judgment from Woo, Szeto filed this case against Woo, Yi, Salveson, and EQD to set aside the transfers of the New York condo, the Seattle property, and EQD. Woo cross-complained against Salveson and EQD, asserting claims like fraud and breach of fiduciary duty.

Just over a year later, Woo filed for Chapter 7 bankruptcy. Salveson alleges that Szeto's San Bernardino judgment against Woo was discharged in 2022 during the bankruptcy proceedings, but there is nothing in the record to confirm this.

In 2023, Szeto filed his operative first amended complaint against Woo, Yi, Salveson, and EQD, alleging claims for (1) setting aside fraudulent conveyances, (2) conspiracy to hinder Szeto's collection efforts, and (3) for an accounting of funds received from the transactions.

Yi responded with a cross-complaint against Szeto, asserting a single cause of action for declaratory relief. Citing the parties' disagreement about who must pay Szeto's judgment against Woo in the San Bernardino case, Yi seeks a declaration that he has no obligations to Szeto arising from his transfer of EQD to Salveson.

Salveson and EQD filed their own cross-complaint against Szeto, asserting claims for declaratory relief, reimbursement, and unfair business practices.[2] The gist of their cross-complaint is that Woo has a history of using

---

[2] Salveson and EQD also assert a claim for indemnification and contribution. However, since Szeto did not challenge that cause of action in

4

the court system to exert pressure on his adversaries, as evidenced by his unmeritorious cross-complaint against Szeto in the San Bernardino case; that Szeto learned from Woo how to use litigation as a form of extortion after years of litigating against him; and that Szeto devised a scheme with Woo in 2022 to use Szeto's pending lawsuit as extortion to force Salveson to return the New York condo so Szeto and Woo could secretly split the proceeds and obtain "vengeance on Salveson."

In their claim for declaratory relief, Salveson and EQD seek a declaration that they have no obligations to Szeto with regard to the transfer of EQD to Salveson, citing the parties' dispute concerning the rightful owner of the New York condo. In their reimbursement cause of action, they assert that if Salveson is required to turn over any assets to Szeto, Szeto must reimburse Salveson for the $950,000 he paid to acquire and litigate his right to own EQD. And in their unfair business practices claim pursuant to Business and Professions Code section 17200, they accuse Szeto of using his complaint as a "'shake-down' to force the return of" the New York condo, despite knowing Salveson paid for the property in good faith.

III.

SZETO'S ANTI-SLAPP MOTIONS

Szeto moved to strike both cross-complaints, asserting the claims arise from protected activity (Szeto's filing of the first amended complaint) and have no merit. Yi, Salveson, and EQD opposed the motions, maintaining their claims arose not from Szeto's pleading but from the parties' underlying dispute over the challenged property transfers. With his replies, Szeto lodged 60 objections to Yi's and Salveson/EQD's opposition evidence.

his anti-SLAPP motion, we will not discuss it further.

5

The trial court overruled Szeto's objections without discussion and denied both anti-SLAPP motions. It found the majority of the challenged claims in the cross-complaints are not based on Szeto's filing of the first amended complaint, but rather from the parties' underlying dispute, and thus do not arise from protected activity. As for Salveson's and EQD's unfair business practices claim, the court found there is a factual dispute about whether Szeto engaged in conduct that is illegal as a matter of law, but that Salveson and EQD established their claim had at least minimal merit by showing that Szeto has not attempted to collect anything from Woo.[3]

DISCUSSION

"Resolution of an anti-SLAPP motion involves two steps." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384.) First, the defendant or cross-defendant[4] must establish that the challenged claim arises from activity protected by section 425.16. (*Ibid.*) Second, if he makes the required showing, the burden shifts to the plaintiff or cross-complainant to establish a probability of prevailing. (*Ibid.*) We review a trial court's order denying an anti-SLAPP motion de novo. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325 (*Flatley*).)

---

[3] In skipping to step two of the anti-SLAPP analysis, the trial court cited *Fremont Reorganizing Corp. v. Faigin* (2011) 198 Cal.App.4th 1153, 1168, for the proposition that where there is a factual dispute about the illegality of the defendant's conduct, the court must "proceed to the second step to determine whether the defendant has established a probability of prevailing."

[4] The anti-SLAPP statute treats cross-complaints the same as complaints. (§ 425.16, subd. (h).)

6

## I.

### STEP ONE: NONE OF THE CHALLENGED CLAIMS ARISE FROM PROTECTED ACTIVITY EXCEPT THE UNFAIR BUSINESS PRACTICES CAUSE OF ACTION

Under step one, we first consider whether Szeto made a threshold showing that the challenged claims in the cross-complaints arise from an act in furtherance of Szeto's right of petition or free speech in connection with a public issue. (§ 425.16, subd. (b)(1).)

The right of petition undoubtedly includes the filing of a complaint. (§ 425.16, subd. (e)(1)–(2) [protected activity includes writings made in a judicial proceeding and statements made in connection with issues under review by a judicial body]; *Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1024 [filing a lawsuit is protected activity].)

However, our analysis does not end there. To meet his burden on step one, Szeto also needed to show the challenged claims "'aris[e] from'" that protected activity. "[A] claim does not 'arise from' protected activity simply because it was filed after, or because of, protected activity, or when protected activity merely provides evidentiary support or context for the claim." (*Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 621 (*Rand*).) "Rather, a claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1060.)

The majority of the challenged claims in the cross-complaints do not pass that test. As this court has explained, "a cross-complaint will ordinarily not be considered a SLAPP suit because a cross-complaint usually arises from the underlying dispute alleged in the complaint, and not out of the litigation process itself; a defendant's oppressive litigation tactics alone will not trigger a dismissal under the anti-SLAPP statute." (*Joslin v. Third*

*Laguna Hills Mutual* (2020) 49 Cal.App.5th 366, 371–372; see *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 77 [not all cross-actions constitute SLAPPs].)

Yi's cause of action for declaratory relief, as well as Salveson's and EQD's causes of action for declaratory relief and reimbursement, all arise from the parties' disputes concerning ownership of the properties and EQD and whether Yi, Salveson, or EQD have any obligations with regard to Szeto's judgment against Woo in the San Bernardino case. Because those claims arise from that underlying dispute and not from Szeto's act of filing his first amended complaint, the trial court correctly denied the anti-SLAPP motions as to those causes of action.

At oral argument, Szeto's counsel insisted those claims arise from protected activity because Szeto's first amended complaint was "what triggered this dispute" and because the "the principal thrust and the gravamen [of the cross-complaints] is to defeat Szeto's petitioning activity." But what triggers a dispute is immaterial—a "claim does not 'arise from' protected activity simply because it was filed after, or because of, protected activity." (*Rand, supra,* 6 Cal.5th at p. 621.) In this case, the petitioning activity itself is not the wrong complained of in the cross-complaints' causes of action for declaratory relief and reimbursement.

Salveson's and EQD's unfair business practices claim is a different matter. In that cause of action, they allege Szeto is using this "meritless litigation" as a "'shake-down'" to force the return of the New York condo. This claim squarely arises from protected activity—Szeto's filing of his first amended complaint. (*City of Colton v. Singletary* (2012) 206 Cal.App.4th 751, 767 (*City of Colton*) [cross-complainant's cause of action for unfair business practices based on plaintiff's filing of lawsuit arose from protected

8

activity]; *Feldman v. 1100 Park Lane Associates* (2008) 160 Cal.App.4th 1467, 1483 [cross-complaint based on plaintiff's filing of unlawful detainer action arose from protected activity].) Szeto therefore met his step one burden as to that claim only.

Salveson and EQD insist that a pleading used as extortion is not protected activity. At oral argument, their counsel cited Woo's 12-year history "of using the courts as extortion" and asserted that Szeto has done the same thing in this litigation.

Salveson and EQD are correct in principle. Where the evidence conclusively establishes, or the defendant concedes, that the allegedly protected activity was illegal as a matter of law—such as where the defendant has committed extortion—the defendant cannot use the anti-SLAPP statute to strike the plaintiff's claim. (*Flatley, supra,* 39 Cal.4th at p. 320; see, e.g., *Cohen v. Brown* (2009) 173 Cal.App.4th 302, 317–318 [attorney's filing of knowingly false State Bar complaint against another lawyer to force him to sign client's settlement check amounted to extortion, which is not protected activity].)

But we see nothing here to indicate that Szeto's first amended complaint amounts to extortion under *Flatley*. Salveson and EQD do not allege that Szeto has overtly threatened to do anything to them if a payment is not made. (See *Flatley, supra,* 39 Cal.4th at p. 326 [extortion is taking property by wrongful use of force or fear, such as by threats]; *Malin v. Singer* (2013) 217 Cal.App.4th 1283, 1289, 1299 [attorney's demand letter threatening to file complaint "'unless this matter is resolved to my client's satisfaction'" was not extortionary because it made "no overt threat"].) Salveson and EQD's extortion argument is thus unavailing.

9

Because Szeto met his burden to show Salveson's and EQD's unfair business practices claim arises from protected activity, we now turn to Salveson's and EQD's burden on step two.

II.

STEP TWO: SALVESON AND EQD DID NOT SHOW A PROBABILITY OF PREVAILING ON THEIR UNFAIR BUSINESS PRACTICES CAUSE OF ACTION

In step two of the anti-SLAPP analysis, Salveson and EQD must demonstrate a probability of prevailing on their unfair business practices claim. Their burden is not high; we do not weigh credibility, nor do we evaluate the weight of the evidence. (*Edward v. Ellis* (2021) 72 Cal.App.5th 780, 789.) Instead, we accept as true all evidence favorable to Salveson and EQD and determine whether they have demonstrated their claim is both legally sufficient and supported by a sufficient prima facie showing of facts that, if credited, would be sufficient to sustain a favorable judgment. (*Id.* at pp. 789–790.) Only a claim that lacks even minimal merit is stricken as a SLAPP. (*Id.* at p. 789.)

Business and Professions Code section 17200 defines unfair competition to include "any unlawful, unfair or fraudulent business act or practice." We assume for the sake of discussion that "[k]nowingly filing or pursuing unmeritorious legal actions that are not factually or legally tenable" for financial purposes or gain "qualifies as an unfair business practice." (*Golden State Seafood, Inc. v. Schloss* (2020) 53 Cal.App.5th 21, 40; but see *City of Colton*, *supra*, 206 Cal.App.4th at p. 771 [litigation privilege made cross-complainant's theory that a lawsuit can be an unfair business practice "highly questionable"][5].)

---

[5] The parties do not brief the litigation privilege.

10

The question, then, is whether Salveson and EQD made a prima facie showing of facts sufficient to sustain their unfair business practices claim. To carry that burden, they cannot rely solely on their cross-complaint and instead must supply "'competent admissible evidence.'" (*City of Costa Mesa v. D'Alessio Investments, LLC* (2013) 214 Cal.App.4th 358, 376 (*City of Costa Mesa*).) They did not do so.

In their opposition to Szeto's anti-SLAPP motion, Salveson and EQD cited four things to demonstrate the supposed merits of their unfair business practices claim against Szeto. None of this evidence even minimally supports their claim.

They first asserted Szeto made a knowingly false allegation that Woo conspired with Yi and Salveson to avoid paying the San Bernardino judgment. In support, they cite Woo's deposition testimony that he does not remember transferring EQD to Salveson. This argument makes no sense. As Salveson conceded in his declaration opposing the anti-SLAPP motion, it was *Yi*, not Woo, who transferred EQD to Salveson. Thus, the cited testimony from Woo's deposition has no bearing on the merits of Szeto's claims, and it certainly does not establish Szeto is knowingly pursuing a meritless claim for financial gain.

Second, Salveson and EQD cited the allegation in their cross-complaint that Szeto learned from Woo how to file false pleadings as a form of extortion. Allegations are not evidence and cannot support a party's burden on step two. (*City of Costa Mesa, supra,* 214 Cal.App.4th at p. 376.)

Third, Salveson and EQD asserted that Woo's retaliatory and meritless cross-complaint against Szeto in the San Bernardino action proves Woo has a history of pursuing meritless litigation. This too is of no

11

consequence; Woo's litigation tactics in a different lawsuit have no bearing on Szeto's intentions in this lawsuit.

Finally, Salveson and EQD note that Szeto's counsel told Woo at the beginning of Woo's deposition that Szeto was not pursuing Woo in any way, thus proving the existence of an agreement between Szeto and Woo to use this litigation as extortion. Not so. An attorney's admonitions at the beginning of a deposition are not meaningful evidence of his client's intentions. Further, Szeto's failure to pursue Woo is no surprise since Woo is apparently insolvent, and it is certainly not sufficient to establish the existence of an illegal shakedown scheme between Szeto and Woo to force Salveson to return the New York condo.

Salveson and EQD's appellate brief similarly fails to cite any evidence supporting their unfair business practices claim. They devote only two sentences to the issue, asserting (without evidentiary citation) that Szeto and Woo "worked out a deal to use a knowingly false pleading to force the return of the [New York] Property." Bare arguments without citation to actual evidence are insufficient to carry the low burden on step two.

In the absence of any evidence[6] showing Szeto is knowingly pursuing an unmeritorious legal action against Salveson and EQD to force

---

[6] Szeto contends in passing that the trial court erred in overruling his 60 evidentiary objections to Salveson and EQD's evidence, but he provides no meaningful discussion as to how the trial court erred. We therefore consider the issue forfeited. (See *Dinslage v. City and County of San Francisco* (2016) 5 Cal.App.5th 368, 377, fn. 3 ["'we do not consider all of the loose and disparate arguments that are not clearly set out in a heading and supported by reasoned legal argument'"].) In any event, given our holding above that Salveson and EQD did not carry their evidentiary burden on step two, any error in admitting their evidence had no impact on this appeal.

12

the return of the New York condo, we conclude Salveson and EQD have not made a prima facie showing that their unfair business practices claim has at least minimal merit.[7] (See *City of Costa Mesa, supra,* 214 Cal.App.4th at p. 376 [affirming grant of anti-SLAPP motion where cross-complainant "provided *no* evidence to support [his] allegations"].) Accordingly, the portion of the trial court's order denying Szeto's motion to strike that cause of action from the cross-complaint is reversed.

DISPOSITION

The order denying Szeto's special motion to strike Yi's cross-complaint is affirmed. Yi is awarded his costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

The order denying Szeto's special motion to strike Salveson's and EQD's cross-complaint is affirmed in part and reversed in part. On remand, the trial court is directed to enter a new order granting that motion in part by striking Salveson's and EQD's second cause of action for unfair business practices, and permitting Szeto to move for attorney fees and costs under section 425.16, subdivision (c)(1). (See *Mann v. Quality Old Time Service, Inc.* (2006) 139 Cal.App.4th 328, 339–340.) In all other respects, the anti-SLAPP motion shall be denied. In the interests of justice, Szeto, Salveson, and EQD

---

[7] Szeto has not asserted the litigation privilege, so we do not opine whether it prevents Salveson and EQD from meeting their step two burden. (E.g. *People v. Potter Handy, LLP* (2023) 97 Cal.App.5th 938, 948 [litigation privilege barred unfair competition action against law firm based on its use of lawsuits to coerce settlements from small business owners].)

13

shall each bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)


SCOTT, J.

WE CONCUR:


MOTOIKE, ACTING P. J.


DELANEY, J.


14